### EVEREST et al. v. DUKE.

No. 8283.

Circuit Court of Appeals, Seventh Circuit.

Dec. 14, 1943.

Writ of Certiorari Denied Feb. 28, 1944.

See 64 S.Ct. 620.

George H. Wallace, Charles B. Cannon, and Wallace & Cannon, all of Chicago, Ill., for appellant.

Fred H. Miller, of Los Angeles, Cal., and Bertram W. Coltman, of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellees charged appellant with infringement of claims 1, 2, 5, 6, 7, 8 and 9 of United States Patent No. 2,095,411, and claim 11 of United States Patent No. 2,181,420. Both patents were issued to appellees on the respective dates of October 12, 1937, and November 28, 1939, on applications filed respectively on February 11, 1936, and on October 8, 1937. The defenses were invalidity and non-infringement. The court made special findings of facts and stated its conclusions of law thereon, holding all claims in issue valid and infringed by appellant. It rendered a decree accordingly and issued injunctive relief in aid of the decree. From that decree this appeal is prosecuted.

The first patent relates to a folding wheel chair. Claim 1 is the broadest,[1] and if valid, appellant concedes infringement of it. However, he contends that it is unpatentable over the following prior art patents: McHugh, No. 652,737; Hockney, No. 909,411; Scorey, No. 1,300,033; Williams, No. 1,895,115; Hayes, No. 1,898,834; and Ericson, No. 1,905,830.

Patentees' problem was to construct a chair wherein the side frames could warp or rack relatively to each other to accommodate themselves to an uneven or irregular surface. Its primary purpose was to secure such flexibility of the chair that it would not teeter or rock on diagonally opposite corners, and that traction of both drive wheels could always be obtained. The disclosure accomplished the purpose, although all elements of the combination were old in the art.

In the patented device there are two rigid side frames connected by a single X-brace, the members of which brace are connected at or near their centers by a longitudinal hinge pin or bolt. The diagonal members of this brace carry sleeves at their lower ends which are rotatable on the lower horizontal bars or rods of the side frames. They are also slightly slidable thereon longitudinally by reason of the fact that the sleeve at the lower end of each diagonal brace is slightly shorter than the lower horizontal bar or rod of the side frame. At the upper ends of the X-brace sleeves are secured, which constitute seat bars, in the ends of which sleeves short end bars are rotatable. These end bars are notched for sliding engagement with vertical bars of the side frames. Such construction enables the chair to collapse into a relatively small space, and the fact that the sleeves on the lower ends of the X-brace are shorter than the lower horizontal bars of the side frames permits one side frame to warp or rack relatively to the other in a longitudinal direction, that is, in substantially the vertical plane of the side frames. Thus, although one side frame might be stationary, the other side frame can shift slightly relatively to it, as may be required on traversing an uneven surface.

Appellant urges that claim 1 defines nothing that would permit the tubular sleeves to slide longitudinally on their rods. Of course, they would thus slide, unless prevented by some limiting means, and the claim does not recite any limiting means. However, both the specification and the drawings disclose such limitation sufficient to maintain the desired flexibility.

---

[1] 1. "A folding chair having two side frames, each frame having a bottom rod forming at least part of a connection between the front and rear ends of its frame, a sleeve rotatably mounted on each rod, a single diagonal brace extending upwardly from each sleeve, the said braces intersecting and being connected by a single hinge pin, the upper end of each diagonal brace being connected to a seat bar, each seat bar having a guiding connection at its ends with parallel portions of the upper part of each side frame, the point of connection of the upper part of each brace to the seat bar being substantially midway between the said parallel portions of the frame."

It is clear that none of the prior art patents relied upon disclose the combination described in claim 1, and most certainly none of them disclose the same objectives as those of appellees. The prior patentees sought and disclosed stability and rigidity without flexibility. The appellees sought and disclosed all of those characteristics, and they accomplished that result with the use of but one set of diagonal braces. All of the cited prior art, except Hockney, used a plurality of such braces, and the latter used no diagonal braces. None of the cited art used a sleeve hinge or a sliding hinge of any nature. McHugh, Williams, Hayes, and Ericson disclose only stationary chairs, and Hockney discloses only three wheels.

Appellant further contends that claim 1 refers to any kind of a folding chair, with or without wheels, and hence it is anticipated by the cited prior art. It is true that claim 1 merely describes a folding chair, but for reasons heretofore stated, that fact does not render the cited prior art any more pertinent. However, this patent was issued by the Patent Office on a "Folding Propulsion Wheel Chair." We understand that all claims should be construed in the light of the specification and the drawings. They conclusively prove that the patent was properly named by the Patent Office, and we are convinced that claim 1 should be construed as referring only to a folding propulsion wheel chair.

Appellant contends that appellees' use of a tubular hinge sleeve did not amount to invention. It is quite true that such hinge was old in the art, and appellees do not claim to be its inventor. Their claim is that they are the inventors of a collapsible wheel chair in which a hinge sleeve is used on the ends of a single X-brace which is located near the center of the chair, whereby one side frame of the chair can warp or rack relatively to the other side frame on traversing uneven ground. This we think constituted a new use of the old elements which the prior art did not disclose.

Again, appellant contends that no invention is involved in reducing a plurality of X-braces to one. Of course, as a general rule, there is no invention in the mere omission of a part or parts of a prior combination together with their functions, if no new and useful result is thereby obtained. Here, however, flexibility was thereby obtained which was not disclosed by the prior art, and that such result was definitely useful is not denied. We think claim 1 is valid and infringed.

Claims 2, 5, 8 and 9 of the first patent are treated together by the parties. Claim 2 describes the folding chair described in claim 1. In addition, it recites the presence of the wheels and the means that confines each sleeve on the rod whereby each sleeve independently of the other may have a slight sliding movement longitudinally. Claim 5, after reciting the side frames and the wheels connected thereto at the front and back, specifies a rod forming part of a connection between the front and rear legs, and a sleeve rotatively and slidably movable upon said rod. Claim 8, in addition, specifies the presence of a single hinge pin at the center of the X-brace which forms a center twist of one frame relative to the other. Claim 9 specifies the limited longitudinal sliding movement between the spacing devices, or X-brace, and the side frames, which permits of the warping or racking required for flexibility.

As to the validity of these claims, appellant urges that all the appellees have done is to carry forward an old idea, and that it is common to have some slidable movement of tubular hinge sleeves, and he asks us to take judicial knowledge of that fact. This we may do for the purpose of argument, but it does not do away with the novelty of the result as to flexibility which appellees disclosed in their combination of old elements. We find nothing in the prior art which discloses or anticipates the disclosures of this patent, and we think claims 2, 5, 8 and 9 are valid.

With respect to claims 2 and 5, appellant has merely reversed the parts and located his slidable sleeves at the top of the X-brace instead of at the bottom, and they are slidable longitudinally to produce flexibility as recited in these claims. Such a reversal of parts will not avoid infringement. Appellant's construction is readable upon claims 2, 5, 8 and 9, and we think infringement is clear as to each.

Claim 6 additionally specifies the upwardly curved part of each bottom assembly to accommodate the caster wheels connected to the frame. Claim 7 additionally specifies that the single hinge pin forms a center relative to which two side frames may twist as to each other whereby all wheels will remain in contact with the ground even though it is uneven. Appellant has cited no prior art which antici-

pates these claims, and we think they are valid.

Moreover, we are convinced that claims 6 and 7 are infringed by appellant's chairs referred to as defendant's Exhibit B and plaintiffs' Exhibit 1. Exhibit B meets the limitations of both claims 6 and 7. The only difference between these two exhibits is that in Exhibit B the large diameter driving wheels are in front and the caster wheels are in the rear, while in Exhibit 1 the large diameter wheels are in the rear and the caster wheels are in front; otherwise the combination is the same. Appellant urges that this difference is sufficient to relieve him from infringement. We think this cannot be true. It would seem that no patentable novelty exists in having the driving wheels in either location, which fact seems to have been conceded by appellant's counsel in the District Court. The heart of this invention lies in the result of flexibility without instability regardless of the position of the wheels.

Patent No. 2,181,420 is a further development of the first patent. Before the latter was issued, appellees discovered that flexibility of the wheel chair could be obtained by having the hinge pin of the single X-brace excessively long so that the members of the brace could move toward and away from each other at the hinge pin. By this disclosure they demonstrated that it is unnecessary to have the sleeves on the X-brace slidable on the horizontal bottom of the frame, and in the second patent that feature is eliminated. Otherwise the patents are substantially the same. In the specification they state:

"In order to connect the two frames to provide a sufficient rigidity, yet to take care of a swivelling action, we employ a single pivot bolt assembly. This uses a long bolt which passes with a close fit through perforations in each of the diagonal braces. This bolt is made of sufficient length so that the head may engage one of the diagonal braces and the nut be spaced from the other diagonal brace to provide a compression spring reacting between the nut

and the adjacent brace, the tension on the spring together with the reaction of the bolt therefore urges the two diagonal braces towards each other but allows sufficient play or working of the braces * * *"

* * * * *

"The somewhat loose connection at the single pivot bolt assembly of the diagonal braces allows a twist or warp of the two side frames of the chair when the wheels on one side for instance meet an obstruction or depression. This allows the traction wheels to always maintain a sufficient contact with the surface over which the chair operates so that the occupant may have sufficient traction to propel the chair manually where an attendant is not wheeling the chair. On account of the diagonal braces being normally spaced apart, this warping permits the two braces to approach until they contact and they may also spread apart a greater distance permitted by the length of the pivot bolt and the spring. Of course this warping or twisting of one side of the chair relative to the other does not permit the chair to operate over large obstructions or depressions but it is quite satisfactory for those usually encountered in the ordinary use of the chair. On account of the long sleeves on the end of the diagonal braces and the close fitting connection which prevents a longitudinal sliding of these sleeves on their supporting rods, the chair has sufficient stiffness while developing the flexibility substantially equal to that of the chair of our patent application and patent above mentioned."

■ Claim 11[2] of this patent is in issue and it defines the long hinge pin, which is the distinctive feature of this claim, as "a connecting means between the diagonal braces permitting a twist or warping of one frame relative to the other * * *" It also specifies a small diameter traction wheel secured to each side frame at a forward position, and a caster wheel secured to each side frame at a rear position. There is also a limitation in the claim that

---

[2] 11. "A wheel chair having two side frames with a pair of diagonal cross braces connecting the side frames, a connecting means between the diagonal braces permitting a twist or warping of one frame relative to the other, a small diameter traction wheel secured to each side frame at a forward position and a caster wheel secured to each side frame at a rear position, a seat between the frames, a drive means operable by the occupant of the seat to actuate the traction wheels, the connection between the diagonal braces providing for the traction wheels being both always in contact with the ground should one wheel engage a slight elevation or be over a slight depression in the ground."

there is a drive means operable by the occupant to actuate the traction wheels. We find nothing in the prior art which in any way anticipates this claim, and we think it is valid. We are also convinced that the appellant's wheel chairs infringe this claim. He not only uses the long hinge pin, but he still uses sleeve hinges at the top of his X-brace and they are still slidable horizontally on the seat bars. However, appellant urges that his sliding sleeves do not slide appreciably when the chair is occupied, but we think this makes no difference. They would slide, if occupied, if he did not use appellees' long hinge pin, and they would still slide with a long hinge pin, if the obstacle encountered by the wheel would require a longer horizontal slide than the hinge pin would permit. We think infringement of this claim is clear, and that the District Court was right in so ruling.

The decree is affirmed.