**BELSINGER, Inc.**

v.

**AMERICAN VISCOSE CORPORATION.**

Civ. A. No. 12628.

United States District Court
E. D. Pennsylvania.
Nov. 5, 1956.

Herbert H. Porter, Washington, D. C., John Dashiell Myers, Philadelphia, Pa., for plaintiff.

Howson & Howson, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a patent infringement suit based upon alleged infringement of Claim 1 of Patent No. 2,453,614 and the single claim of No. 2,512,539, both issued to the plaintiff. As to both patents, the major issues are invalidity for lack of invention over prior patents and publications, and non-infringement. The patents are for large-scale shipping containers, particularly the type used in the packaging and shipping of rayon yarn.

Rayon yarn is commonly prepared for shipment by winding it on paper tubes in the form of truncated cones. The cones are then wrapped and placed in trays having holes in them which hold the cones in place and the trays are put, one above another, into paperboard containers which are then closed and sealed.

The shipment of rayon yarn has a number of problems which are peculiar to the industry. It has been found that, for the domestic trade, the desirable number of cones to be shipped in each container is 96, and this calls for a container of considerable size. Actually, those used by the defendant are 52 inches tall by 26 inches square. If a container of this size and shape were to be packed when horizontal, it would have to be up-ended before it would be practicable to move it on a hand truck, which is the way these containers are ordinarily handled in the factory. Consequently, the containers should be packed when standing upright in order to avoid shifting of the cones when up-ended. Inasmuch as a container over four feet high in an upright position cannot very well be packed by a person reaching down into it from the top there has to be some access to the interior from the side, which access will be closed and sealed when the packing is completed.

Rayon yarn is an expensive and delicate product and it is practically a "must" that any container in which it is shipped be capable of "pressure packing", that is, when closed some part of the container will press upon the lading and hold the cones against shifting and against the effect of external shocks during handling and shipment. It goes without saying that the containers should be light, inexpensive and capable of sealing to prevent dirt getting in.

An account of the shipping methods of the industry begins with "coffin-type" wooden boxes of about the same size as the defendant's, but packed through their open lids while in a horizontal position. Paperboard containers of smaller sizes were offered to the industry in the 1930's but without success. During the war, wooden containers could not be obtained and paperboard boxes of the same size and style as the wooden ones were used. These, however, were found to be unsatisfactory because they had to be packed horizontal-

ly and the paperboard was not strong enough to prevent shifting when they were up-ended. Until 1946 there was no general use of paperboard containers except as an unsatisfactory substitute for wooden ones. Those which were used were of small size and were packed from the top.

The patents in suit met the requirements of the industry by providing, first, a liner in an upright position and, then, two outer sleeve-type closure sections which telescoped over the liner. Access to the interior of the liner at a height not greater than the normal human reach was provided in the '614 patent by cutting the upper portion of the front panel of the liner so as to make it into a flap which could swing outwardly and down. When the container had been packed, the flap could be swung back to complete the panel and the upper closure section drawn down over it. In the '539 patent access was provided by simply omitting the front panel of the liner altogether. The rayon cones could then be put in, since the lower closure portion was no higher than the packer's reach. The upper closure section then came down over the liner and closed the container. In the '614 patent the liner, when the container was closed, made a complete four-sided tube, thus giving the contents the protection of a double wall on all four sides. The '539 patent, of course, had this double wall on three sides only.

The sleeve type, telescoping closure sections, made it easy to apply pressure to the lading from the top as the upper one was drawn down into abutment with the lower and this could be, and in practice actually was, supplemented by placing a pad of yielding material between the top of the closure section and the top layer of cones.

Containers constructed in accordance with the patents proved satisfactory to the industry as a means of meeting the special requirements involved in packing and shipping cones of rayon yarn. The defendant, one of the largest manufacturers, has used over a million of them. It is safe to say that the plaintiff's patents made a useful contribution to the art.

■ The structure of the patent was novel. Although all of its elements are to be found in the prior art, I do not find any shipping container which combines a liner with a swingable flap so constructed as to provide access at a convenient level for packing, with telescoping closure sections.

The result achieved by the combination of these elements is a container which, although large enough to be useful for shipping rayon yarn, can still be easily packed in a vertical position and which will lend itself to a proper degree of pressure packing of the yarn. This I find to be a novel result.

■■ The defendant cited a rather extensive prior art including two earlier patents to Belsinger. Most of this shows no more than the conceded fact that the individual elements of the plaintiff's structure are all to be found in earlier containers of various kinds. I cannot find any prior art patent or structure which attempts to deal with the problem of providing access to permit packing of a box adapted to pressure packing and too tall to be packed from the top. The defendant relies rather strongly upon the patents of Fleming and MacDonald. The Fleming patent is for a box to contain pencils and the MacDonald patent is for a form of showcase to display packs of cigarettes. The objectives and indicated uses of the structures of these two patents are so completely different from those of the patents in suit that I do not think it would have occurred to a person using them that they could be applied to the same purpose. In such case, novelty is not negatived by similarity of construction. Casco Products Corporation v. G. M. Mfg. Co., Inc., D.C., 59 F.2d 204. Or, as somewhat differently stated, novelty is not negatived if the prior patent gives no indication that its inventor contemplated that his invention was capable of the use of the patent in suit. Cusano v. Kotler, D.C., 64 F.Supp.

908, 909. I am quite sure that a person skilled in the art, looking at the collection of bins, cloth bags, trunks, tool kits, pencil boxes and cigarette boxes, would not be likely to derive from them, as obvious, the containers of the patents in suit.

The plaintiff's invention is not a pioneer one nor did it solve a serious problem for which a whole industry had been groping for a solution for years. However, I think that it made a real contribution to the art, and I find that the plaintiff did invent something.

■■ What I have said, so far as it relates to the needs of the industry and the way they were met by the plaintiff, applies to both patents. My finding of validity, however, is restricted to the earlier of the two, namely, 2,453,614. The only thing which distinguishes the '539 patent from it is that in the latter the entire front panel of the liner is simply left out instead of having a flap cut out of it. The only difference in the result is that the container, when closed, has only a single front wall instead of a double one. I have not heard any suggestion that this is an advantage and, in fact, it strikes me as a distinct disadvantage. " * * * as a general rule, there is no invention in the mere omission of a part or parts of a prior combination together with their functions, if no new and useful result is thereby obtained." Everest v. Duke, 7 Cir., 139 F.2d 22, 24. Whether it be called double patenting or something else, the patent is invalid because it simply is not an inventive advance over '614 considered in the light of the earlier patents to Belsinger and Illges. See In re Mason, 62 F.2d 185, 20 C.C.P.A., Patents, 782.

The question of infringement remains. In addition to the two closure sections, the accused structure is made up of three parts. One is an insert placed in the bottom of the lower closure section. This insert extends over the entire bottom and up one side to within six inches of the top of this lower closure section. Then a three-sided liner is inserted. The box is then packed and, when packing is completed, a third insert is added which covers the entire top and extends down the open side into the lower closure section so that it abuts upon the first insert. The top closure section is then applied, so that the package as completed affords double protection at both ends as well as on four sides. There is nothing in the accused structure to correspond with the swingable flap called for by Patent '614, nor is there anything which is an equivalent unless the patent be given a very wide range of equivalents.

■ In dealing with the issue of infringement and the applicability of the doctrine of equivalents, it is important to have in mind at all times the objective of the invention. If one places these two containers, that of the patent and that of the accused structure, side by side, after both have been fully assembled, packed and sealed, there will be very little difference between them. However, if all that had been patented was a tall box which when closed would have double walls all around, there certainly would have been no invention in view of the prior art and probably no patent. What the patentee was endeavoring to achieve and what he patented was a box that could be assembled and packed in a certain way, and the manner in which the container has to be put together, packed and closed is the whole essence of the invention.

In view of this, it seems perfectly clear that no part of the accused structure with its three-sided liner and its two other inserts is the equivalent of the patented structure's four-sided liner with its side opening and swingable flap, and the accused structure does not infringe.

A decree may be submitted in accordance with the foregoing.