25 C.C.P.A. (Patents)

In re GREEN.

Patent Appeal No. 3906.

Court of Customs and Patent Appeals.

May 31, 1938.

Rehearing Denied June 27, 1938.

Myron J. Dikeman, of Detroit, Mich., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims—3 to 8, inclusive—in appellant's application for a patent for an alleged invention in improvements in a "Magnetic Impulse Contactor."

Claims 3 and 5 are illustrative of the appealed claims. They read:

"3. A magnetic impulse registering device adapted for registering electric impulses caused by certain passing objects and operative therewith, comprising a magnet of the permanent type surrounded by continuous coil winding of fine insulated wire, a sensitive relay instrument having its energising coil electrically connected by intervening electric circuit wires with the magnet coil winding, said relay being provided with closable electric contact terminal members connected by electric circuit wires in a separated electric circuit having an auxiliary relay instrument connected therein, said auxiliary relay having switch means mounted thereon also connected by electric circuit wires in another separated electric circuit, and an electric impulse registering unit electrically connected within the said auxiliary relay circuit."

"5. A magnetic impulse contactor device adapted for registering electric impulses caused by the passing of certain objects and actuated thereby, comprising a permanent magnet core section surrounded by continuous core induction winding of numerous turns of fine insulated wire, a non-magnetic casing mounted over said magnet and coil winding, a sensitive relay instrument connected electrically by intervening electric circuit wires with the magnet coil winding, said relay being provided with closable electric contact terminal members mounted thereon and connected by electric circuit wires in a separated electric circuit having an electric impulse registering unit connected therein, and a relay circuit holding contactor also connected within the same separated electric circuit."

The references are:

| | | | |
|---|---|---|---|
| Edison, | 470,923, | March | 15, 1892; |
| Dixon, | 570,700, | November | 3, 1896; |
| Kleinschmidt, | 881,005, | March | 3, 1908; |
| Bryant, | 1,296,360, | March | 4, 1919; |
| Finnigan, | 1,302,345, | April | 29, 1919; |
| Wells, | 1,332,451, | March | 2, 1920; |
| Harvey, | 1,495,790, | May | 27, 1924; |
| Nelson, Re, | 17,602, | February | 18, 1930; |
| Cleaver, | 1,768,524, | June | 24, 1930; |
| Grondahl et al., | 1,798,256, | March | 31, 1931. |

Each of the elements in appellant's device is old. The issue in the case, therefore, is whether appellant's arrangement of old elements in what must be conceded to be a new combination is new and useful and involves invention.

The following excerpt is taken from appellant's application:

"My device is herein illustrated in the drawings as applied to a simple electric light signal as may be adapted to a street crossing signal unit, although it is to be understood that any other type of impulse signal unit or device may be used in its place if desired. The drawings illustrate the magnet impluse unit as installed across a highway for signaling the approach, or counting passing automobiles, although it may be as readily adapted for recording, by electric impulses, the passing of any other metalic magnetic unit such as metal parts dispensed from a manufacturing machine, the magnetic impulse bar being designed and positioned so the metal parts will pass through the magnetic field."

Appellant's device consists of a permanent magnet bar around which is wound a coil of fine insulated wire. The ends of the wire coil are extended as leads and connected to a sensitive relay instrument. The permanent magnet bar is enclosed in a casing to protect the bar when it is embedded in the ground under a road or street. When the magnetic field surrounding the permanent bar is disturbed by passing magnetic material, an electric impulse is induced in the coil. To make use of such electric impulse, as stated by the Primary Examiner—

" * * * the coil leads are connected to a relay of the rotor type. The leads are connected to the coil of the wound rotor situated in the magnetic field of the relay magnet. To this rotor is attached a contact arm which is normally maintained in a position intermediate contacts presumably by proper adjustment of a spiral spring element. (The spring is shown but not specifically referred to by the applicant in his description but relays of this type are well known.)

"An electrical impulse in the coil of [the] rotor, such as might be caused by an induced E.M.F. as described, will cause a slight rotation of the rotor and consequently of the [contact] arm, causing the latter to contact [one of the terminal contact points] depending on the direction of the electric impulse wave and for a time depending on the length of the impulse. The contact arms and the [terminal contact points] * * * are connected so that when engaged they will close some type of electric circuit. * * *

"The specific circuit herein shown is another relay circuit."

Appellant's device also includes a holding relay, referred to in the application as relay "K," which, as stated by the Primary Examiner, when energized "closes a branch circuit around the contact arm of the relay F so that relays F and K mutually lock each other. Applicant shows batteries E and H for the relay F circuit and the signal circuit respectively but in dashed lines shows a common source for both." When the holding relay "K" is in operation, the signal is continuous.

With reference to the holding relay, specified in claims 5 and 6, the board stated:

"* * * as claimed, no definite function is developed for the circuit-holding contactor. As we understand its operation, it serves to control a shunt circuit which maintains the relay F energized after the passage of the metallic object and the consequent opening of the circuit of relay F by the relay C.

"While no reference cited by the examiner shows the use of a relay corresponding to appellant's relay K in an organization such as disclosed, the claims on appeal fail to bring out any such structure and relationship as to develop any useful function for this contactor."

With reference to the quoted excerpt from the board's decision, counsel for appellant stated in his brief that, although a thermostatic switch unit was not set forth in the appealed claims as being a part of appellant's combination, such a unit is a common expedient for controlling the duration of an electric impulse, and would be used by any electrician in connection with appellant's combination when needed, and that, therefore, it was not believed necessary to include it in the claims. Counsel further stated that if the court was of opinion that that element should be specified in the claims as a part of appellant's combination, it should permit an amendment of the claims to that extent and for that purpose.

It is well settled that claims cannot be amended in this court. In re Riebel, Jr., 69 F.2d 563, 21 C.C.P.A., Patents, 972.

In his decision, the Primary Examiner analyzed each of the cited references, applied them to the appealed claims, and held that the claims were unpatentable for two reasons; namely, first, they "define an old combination," and, second, they do not involve invention in view of the prior art.

The Board of Appeals apparently overruled the examiner's decision as to the first ground of rejection. With regard thereto, the board said:

"A large number of references have been cited by the examiner to show general organizations of the type here claimed, i. e., these references show some sort of a signaling device controlled by a relay which is in turn controlled by some sort of a circuit closer. In the broadest aspect, that is the combination here claimed. *However, we do not feel that organizations such as here involved should be reduced to their broadest aspect and rejected on references which merely disclose the generic elements.*" (Italics ours.)

We deem it unnecessary to explain the structure of the devices disclosed in all of the many references.

The patent to Cleaver relates to a device for the transmission of magnetic impulses for signaling and other purposes. The patent discloses a magnet bar wound with a coil of insulating wire for use as a railway track signaling device. It is so arranged and designed that when a passing train disturbs the magnetic field of the bar, an electric impulse is induced in the coil as in applicant's device. The ends of the coil are connected to a magnetic device, which controls a permanently magnetized armature. The armature is pivoted between two terminals included in a circuit, which circuit energizes a signal. The patentee discloses a relay of the rotor type.

The patent to Finnigan relates to a system of train control. It discloses a magnetic detector somewhat similar to that disclosed by the patentee Cleaver, and, so far as this case is concerned, has no other or further bearing than that of the Cleaver disclosure.

The patent to Wells relates to a railway signal device. It discloses a permanent magnet in the form of a horseshoe. The magnet is attached to the side of a rail by connecting bars. An induction coil winding is mounted on the connecting bars, and when a car wheel passes the instrument an electric impulse is induced in the coils, which can be utilized to control any desired apparatus, such as railway signals, etc.

In each of those patents the elements —the magnetic detector, the signal unit, and the relay system for operating the signal unit—are shown to be old. The same is true in the patents to Kleinschmidt, Edison, Nelson, Bryant, and Dixon.

Although none of the references shows the combination defined in the appealed claims, all of the essentials of appellant's combination are disclosed, including, as stated by the board, "the specific means involved for closing the primary circuit."

In view of the examiner's exhaustive discussion, the Board of Appeals apparently deemed it unnecessary to explain in detail why, in its opinion, the appealed claims were not patentable over the references.

In its decision, the board said:

"The patent to Cleaver, for instance, shows a permanent magnet having a surrounding coil, the terminals of which are connected to a sensitive relay. The relay of this patent directly controls the signaling circuit. We see nothing inventive in cascading the relay arrangement to any desired extent. We are unable to see that any new or unobvious result is obtained by the addition of further relays by the initial circuit closer and the final circuit. In the Cleaver device the field surrounding the permanent magnet is disturbed by the passage of a train, the wheels and axles of which bridge the terminals of the permanent magnet. It is well-recognized, however, that any disturbance to a magnetic field of the type here involved will set up an appreciable flow of current in a conductor disposed about the magnet. A number of the references relied upon show combinations similar to that of Cleaver, wherein use is made of this well-known principle. The Cleaver magnet is to some extent housed by the part shown in section in Fig. 4. We see nothing inventive in providing a non-magnetic casing for the parts in view of the disclosure of this figure."

Counsel for appellant argues in his brief that as the combination defined in the appealed claims is new and useful, nothing more is necessary to make it patentable. We quote from the brief of counsel: "That a device is new and useful is all that is required by the patent law to constitute patentable invention."

It is obvious from a study of the references and the appealed claims that appellant's device is new, and it may be conceded that it is useful; nevertheless, as stated by the Supreme Court in the case of Thompson v. Boisselier, 114 U.S. 1, 5 S.Ct. 1042, 1047, 29 L.Ed. 76, "it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but *it must, under the constitution and the statute, amount to an invention or discovery.*" (Italics ours.) See also In re Edwin G. Staude, 46 F.2d 579, 18 C.C.P.A., Patents, 894; In re John B. Burnham, 53 F.2d 534, 19 C.C.P.A., Patents, 723.

A "relay" is defined in Webster's New International Dictionary as follows: "3. Elec. An electromagnetic device by which the opening or closing of one circuit produces a corresponding opening or closing of another, more powerful one. * * *"

In our opinion appellant has done nothing more than to cascade in an obvious way the relay arrangement disclosed in the prior art; that is, he has added a relay in a series.

"Cascade" is defined by the lexicographers as follows:

"3. An arrangement of the parts of an apparatus so that fluid passes, or is conceived to pass, from one to another, down the series * * *.

*"Cascade system. Elec.* A system or method of connecting and operating two induction motors so that the primary circuit of one is connected to the secondary circuit of the other, the primary circuit of the latter being connected to the source of supply * * *." Webster's New International Dictionary.

In view of the issues here presented, it is unnecessary to hold that there would be "nothing inventive in cascading the relay *arrangement to any desired extent,*" as stated in the decision of the board. (Italics ours.) It is sufficient to hold that we find nothing inventive in appellant's combination. Other minor matters are discussed in the opinions of the tribunals of the Patent Office; such as, for example, the enclosure of appellant's magnet bar in a non-magnetic casing. However, it is so clear that they do not lend patentability to the appealed claims that we deem it unnecessary to discuss them.

The decision of the Board of Appeals is affirmed.

Affirmed.