43 C.C.P.A. (Patents)

**Application of Birdsall P. LAWSON, Deceased (Pilling Chain Co., Assignee).**

**Patent Appeal No. 6157.**

United States Court of Customs and Patent Appeals.

Dec. 8, 1955.

David J. Moscovitz, New York City (Robert I. Dennison, Washington, D. C., and Alfred E. Page, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C., (S. W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON, retired, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable claims 1 to 14 in appellant's application for a patent for "Non-Jamming Slider for Separable Fasteners."

The appealed claims relate to a construction for the slider element which is used for engaging and disengaging the complementary opposed teeth (scoops) of a slide fastener. The slider element, that is, the part of the slide fastener which is adapted to be moved back and forth along the rows of teeth, consists broadly of two flat surfaces, or wings, which are connected to each other at one end by a post. Each wing has a pair of inwardly extending flanges extending therefrom, and the flanges on both wings are opposed to define a channel through which the rows of teeth pass during the operation of the slide fastener. The alleged invention is that the wings are tilted toward each other so that there is a greater clearance between the teeth and the wings at the post end of the slider than at the end remote from

the post. The ultimate effect of such construction is to make the opposed flanges tend to converge toward each other. Thus if foreign material, such as threads from a garment, enters the portion of the slider which has greater clearance and tends to stop movement thereof by wedging between the flanges and the teeth, the slider can be "backed off" without causing jamming. It is also stated in the specification that the slider " * * * (by virtue of the resiliency in those portions of the opposing converging wings which establishes, under stress, a lever movement from the connecting post to the outer end of the channel, and the inherent resilience of the material of, or the method of forming, the slider) may function, in those cases where bunching is slight, to permit the bunched material to pass through the slider upon exercise of manual effort of the tab, since the wings spread from their normal converging relationship * * * to a position of parallelism which provides a channel of much greater depth than the height of the stringer scoop." On the other hand, if foreign material tends to cause jamming by attempting entrance at the end of the slider which has less clearance (the end remote from the post), the slider is manipulated back and forth until clearance occurs. It is to be noted at this point that there is clearance between the teeth and wings of the slider at both ends of the latter, the clearance at the post end of the slider being greater than the clearance at the opposite end thereof.

Claims 4 and 14, which are representative of the appealed claims, read as follow:

"4. In a separable slide fastener assembly in combination with opposing stringers mounting scoops of common thickness and having parallel upper and lower surfaces, a slider having a pair of opposing wings and a neck defining post connecting the same at one end to define a "Y" channel formation, said wings converging in the vertical plane toward each other from said post toward the other ends thereof defining the stem of said "Y" channel formation, at least one of said wings being extended from said post at an angle less than normal to the post the vertical spacing of the wings at the zone of narrowest wing convergence being slightly greater than the scoop thickness to permit unhindered relative reciprocation at such zone of said slider and scoops.

"14. In a separable slide fastener assembly in combination with opposing stringers mounting scoops of common thickness and having parallel upper and lower surfaces, a slider comprising overlying spaced wings formed to cooperatively provide a pair of angularly directed channels in the vertical plane extending to one end of the slider and merging into a central channel extending to the other end of the slider, and a post interconnecting said wings adjacent one end of the slider, the angularly directed channels being of greater height than the thickness of said scoops at such one end of the slider, said wings being connected to extend relative to each other at an angle less than parallelism, each said wing being of material capable of being flexed from angular relationship toward parallelism about an axis defined at the connecting point thereof, the amount of flexing displacement being proportional to the amount of stress applied thereto, said wings having inwardly directed rails extending along each outer longitudinal edge and the rails of one channel being spaced from those of the other channel to provide tape receiving slots, said rails being of the same height throughout their length, the normal unstressed wing spacing at the zone of narrowest wing convergence of the central channel being greater than that of the scoop thickness."

The reference relied on by the Patent Office tribunals is:

Schaye 2,575,187 November 13, 1951 (Filed July 8, 1948)

The Schaye patent relates to a slide fastener which does not require any extraneous members for locking the slider at any point of its travel. The teeth of the slide fastener are of conventional construction. However, the slider has wings with flanges thereon, said wings being connected to each other at one end by a post in the same manner as appellant's slider. Furthermore, the wings are tilted toward each other so that the spacing between the wings at the post end is greater than the spacing between them at the other end of the slider. The slider is resilient, and when it is mounted in the rows of teeth, or stringers, the portions of the wings at the end of the slider which has the least spacing bear on the teeth which are positioned between the wings to provide friction against undesired movement of the slider. It is to be noted that there is no clearance between the wings and the teeth at the narrow end of the slider, but there is clearance at the post end of the slider. It is to be further noted that Schaye discusses a conventional slider structure which both from the drawing and specification appears to have parallel wings.

The examiner rejected all of the claims as being unpatentable over Schaye. The examiner stated that the only limitation in the claims which defined over the Schaye patent related to the spacing between the slider and the teeth at the narrowest portion of the slider. In this respect he stated, "Whether this spacing is exactly equal to (as in Schaye) or greater than the height of the scoops is patentably immaterial since the converging wings of the Schaye slider will function to dislodge foreign matter in the exact same manner as the slider of applicant."

The Board of Appeals affirmed this rejection. The board also rejected the claims for the reason that "appellant's structure as claimed will not necessarily produce any result not produced by the conventional slider construction disclosed by Schaye." In this respect, it is to be noted that the Schaye specification broadly discusses a conventional slider construction. Relative to this conventional structure the board stated, "Considering such conventional structure it is obvious that if extraneous matter enters between the slider wings with the stringers and the thickness of such material is less than the amount of clearance such material will pass through with the stringers without jamming. If the extraneous matter is substantially thicker than the clearance, it would abut against the curved ends of the wings whereupon the direction of movement of the slider could be reversed and the slider moved off the extraneous matter in the same manner as with appellant's structure." The board concluded that although it did find a difference in appellant's structure over both the conventional structure and Schaye's structure, it felt that this difference was not sufficient to warrant the granting of a patent. It is to be further noted that the board specifically stated, "* * * since Schaye taught bending the wings toward each other, although for a different purpose, and to a different degree from appellant and since the claims are broadly worded as to the degree of convergence and do not set forth the amounts of clearance they differ in an arbitrary and immaterial manner from the structure disclosed by Schaye * * *."

Before proceeding further with this opinion, we must again state that the only difference between appellant's structure and the Schaye structure is that the former has clearance between the teeth and the narrow portion of the slider, whereas the latter has no such clearance. As far as the functioning of the two sliders is concerned, the Schaye slider must inherently function to minimize jamming in the same manner as appellant's slider because of its similarity in structure to appellant's slider.

The specific question in this case, as we view it, is: Where the patent which is relied on as an anticipation is from

the same art and inherently functions in the same manner and possesses substantially the same structure as the device sought to be patented, is the prior art patent a valid anticipation when the patentee did not recognize that his device would give the same result which is claimed by the applicant?

■■ It has been held in the past that where the prior art structure is substantially similar to the structure sought to be patented, even though its function might be different, the similarity in structure alone is sufficient to negative patentability, In re Griswold, 152 F.2d 1014, 33 C.C.P.A., Patents, 799. It has also been held that where it is obvious that the prior art structure is substantially similar to and would perform the same function as the structure sought to be patented, the latter is unpatentable regardless of whether the prior art patentee intended the structure to be used for the same purpose. In re Langford, 37 F.2d 753, 17 C.C.P.A., Patents, 844. The rationale behind the denying of a patent under these circumstances appears to be that there is no invention in perceiving that the product which others had discovered had qualities they failed to detect; more than a new advantage of a product must be discovered in order to claim invention. General Electric Co. v. Jewel Incandescent Lamp Co., 1945, 326 U.S. 242, 249, 66 S.Ct. 81, 90 L.Ed. 43.

■■ Appellant argues that the prior art does not disclose or contemplate appellant's novel concept for minimizing jamming. However, it is well settled that everything which is disclosed as being novel is not necessarily patentable because it must also be useful and involve invention. In re Rose, 220 F.2d 459, 42 C.C.P.A., Patents, 817; In re Green, 97 F.2d 130, 25 C.C.P.A., Patents, 1143. We feel that the element of invention is lacking in the present case since appellant, in essence, has merely recognized that the Schaye structure has an advantage, the non-jamming function, which the patentee Schaye apparently failed to detect.

■ In reaching the foregoing conclusion, we are not unmindful of the fact that there is a structural difference between appellant's device and the Schaye device, namely, the clearance at one end of the slider. However, we have frequently held that when no new or unexpected result can be achieved by a structural change, thus rendering a change non-inventive, a recitation in a claim calling for such non-inventive structure which is not shown in the prior art does not make the claim patentable over the prior art. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982, and cases cited therein. It seems quite clear to us that the clearance at one end of the slider which is present in appellant's device but not in Schaye's does not give any new or unexpected results, and does therefore not involve invention.

The present case is very similar to the case of In re Spears, 1955, 223 F.2d 956, 42 C.C.P.A., Patents, 1028. In that case the appellant had applied for a patent on a pin-type flower holder. A patent relating to a flower holder, which was very similar to the device described in the application, was cited as prior art. There were some structural differences between the two. However, the patent did not teach that the flower holder described therein could be used in the manner proposed by the appellant, and it was urged by the latter that he had disclosed a new concept. Notwithstanding that the appellant had disclosed a novel concept, this court stated that even though there was a structural difference between the devices of the application and the patent, it did not follow that the features claimed by the applicant necessarily involved invention.

It is to be noted that in In re Spears, supra, the device cited as prior art could be caused to function in the manner disclosed by the applicant, but did not inherently function in that manner. Thus based on the reasoning which found that there was no invention present in the Spears case, we are of the opinion there is no invention present in the instant case because the Schaye device is not

only capable of functioning in the manner proposed by appellant, but must inherently function in the same manner as appellant's. The facts tending to negate invention are thus clearer here than they were in the Spears case.

 Since the rejection on Schaye must be sustained, there is no need to consider the other rejections of the claims. In re Miller, 159 F.2d 756, 34 C.C.P.A., Patents, 910. We have fully considered the arguments presented by appellant. However, we feel that we need not discuss them since the foregoing opinion is determinative of the issues in this case.

For the above reasons, the decision appealed from is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate.