43 C.C.P.A. (Patents)
**Matter of the Application of Edward A. PATTON and Forrest F. Beil.**
**Patent Appeal No. 6213.**

United States Court of Customs and Patent Appeals.
June 20, 1956.

**500**

JOHNSON, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable claims 34, 35, 36, and 37, the only remaining claims in appellants' application for a patent entitled "Cellulosic Board and Method of Treating the Same."

The alleged invention, as disclosed in the specification and defined in the claims, relates to a method of ornamenting construction board which is made from sawdust bound together with a thermosetting resinous binder. This type of board, before ornamentation, is of uniform color and has no grain. In order to cause the construction board to simulate natural wood having a grain, a liquid material, preferably colored, is diffused into localized areas of the board in the pattern of the desired grain. This liquid material has the characteristic of reducing the absorptivity of these localized areas to any subsequently applied oil stains. When the board is subsequently stained, the uncoated portions of the board absorb the stain more readily than the coated portions and cause the uncoated portions to become darker than the coated portions. It is stated in the specification that the liquid material can consist of "alkyd varnish, a varnish containing a phenol-formaldehyde resin modified by reaction with a drying oil, or an alcohol solution of a resin insoluble in water, oil, and hydrocarbon solvents." It is to be further noted that the specification of the application clearly states " * * * the methods of the present invention may be used to apply a grain to natural wood panels of light color and devoid of any pronounced grain." In the foregoing manner, building board or natural wood having no grain can be made to simulate boards having a natural grain.

The appealed claims read as follows:

"34. A method of preparing wood particles made up in board form by admixture with a resinous binder and lacking the grain appear-

Bair, Freeman & Molinare, Chicago, Ill. (George B. Newitt, Chicago, Ill., and D. D. Alegretti, Chicago, Ill., of counsel), for appellants.

Clarence W. Moore, Washington, D. C., for the Commissioner of Patents.

Before JOHNSON, Acting Chief Judge, and COLE and JACKSON (re-tired), Judges.

ance normal to natural wood, to simulate natural grained wood, said method comprising diffusing into localized areas of said board when so made up a colored liquid material capable of being absorbed by said wood particles to obscure the individual particles in said areas, and also capable of reducing the absorption by said particles of any oil stain subsequently applied thereto, said localized areas being distributed over said board in a pattern realistically simulating natural wood grain.

"35. A method according to Claim 34 in which said material includes a dispersion of colored solid material having a particle size not in excess of 0.5 microns.

"36. A method according to Claim 34 in which said material includes an alkyd varnish.

"37. A method according to Claim 34 in which said material includes a phenol-formaldehyde resin modified by reaction with a drying oil."

The references relied on are:

Lynn 653,872 July 17, 1900
Hanson 2,010,857 Aug. 13, 1935

The Lynn patent relates to a process for ornamenting natural wood. In performing the process, a dressed piece of wood has a stopping coat of varnish impervious material such as varnish, glue, size, or shellac applied thereto in a desired pattern. A coating of filler material, which may also serve as a stain for the wood is then applied to the entire surface of the wood. The filler enters the wood at the uncoated portions, but does not permeate the surface where the stopping coat has been applied. After the foregoing steps have been performed the wood is dressed by the use of a suitable abrading material and can then be again varnished. The patentee has described his process by relating how to make plain oak simulate quartered oak, but has specifically stated that the purpose of the process is for " * * * ornamenting the surface of wood * * whereby the appearance of the wood is changed so that an inferior grade or quality of wood may have the appearance of a grade of a different or superior quality * * *" and the process " * * * is adapted for a wide variety of uses and is adapted to the simulation of many kinds of ornamental woods. * * *" It is to be further noted that while the stopping coat used with the oak wood was characterized as being transparent or translucent, it is stated in the patent that " * * * the material of which the stopping coat is composed might be colored and, further, that the process herein described will be modified or changed in immaterial respects in the treatment of different kinds of woods to secure different results."

The patent to Hanson shows it to be old to use a colored alkyd resin or varnish for coating purposes.

Claims 34 and 35 were rejected by the Primary Examiner as being unpatentable over Lynn, and claim 36 was rejected as being unpatentable over Lynn in view of Hanson. Claim 37 was rejected as not reading on the elected species. Relative to claim 34, the examiner stated in part:

" * * * The only difference in method recited in this claim over that shown by Lynn is the use of composition board as the wood base. Though Lynn describes his process as using a specific type of wood, he contemplates use of any type of wood surface. Applicants do not change this old and well known process of applying a masking grain pattern before application of the stain merely by employing composition board as the wood base. The graining process is still the same in both instances."

With respect to claim 35 the examiner was of the opinion that the particle size of .5 microns recited therein was not critical " * * * since the optimum size could be determined relative to the desired degree of penetration by routine

**502**

experimentation of one skilled in the art. Furthermore, in the absence of the degree of porosity of the base, limitation to particle size is meaningless \* \* \*." Claim 36 was rejected as being unpatentable over Lynn in view of Hanson, no invention being seen by the examiner in the use of the pigmented alkyd resin of the latter in the graining composition of Lynn.

The Board of Appeals sustained the rejection of the claims for substantially the same reasons given by the examiner. In essence, it was the opinion of the board that it would involve no invention to apply the process of Lynn to a board formed from sawdust.

The question before us on appeal is whether the claimed process which is restricted to forming a grain pattern on cellulosic board defines invention over the prior art.

■■ It was held at an early date, and we still believe it to be sound law, that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated. Pennsylvania Railroad Co. v. Locomotive Engine Safety Truck Co., 1883, 110 U.S. 490, 494, 4 S.Ct. 220, 28 L.Ed. 222; Ansonia Brass & Copper Co. v. Electrical Supply Co., 1891, 144 U.S. 11, 18, 12 S.Ct. 601, 36 L.Ed. 327; In re LaVerne, 229 F.2d 470, 43 C.C.P.A., Patents, 767. Furthermore, it is well settled that a patentee is entitled to every use for which his invention is susceptible whether such use be known or unknown to him; but this does not negate the possibility of there being invention in the use of a device which has been modified when it is applied to a remote and non-analogous art. Potts v. Creager, 1894, 155 U.S. 597, 606, 15 S.Ct. 194, 39 L.Ed. 275. In re LaVerne, supra.

We will now proceed to analyze claim 34 in the light of the foregoing well-settled law to determine whether it recites invention over the process taught by Lynn. A difference between the claim and Lynn which is quite obvious is that the claim relates to "building" board whereas the Lynn patent relates to natural board. However, it is our opinion that "building" board and natural board are analogous in this case. It is therefore our conclusion, relative to this aspect of the case, that if the Lynn process is substantially the same as appellants' process, there would be no invention involved in applying Lynn's old process relating to natural board to an analogous material, namely, "building" board.

That the Lynn process is substantially the same as appellants' process, aside from the change in the subject matter operated on, we have no doubt. Both the applicants and Lynn apply a "stopping" coat in a desired pattern to subject matter which is to be given the appearance of a grain which is different from the grain of the base wood. Furthermore, function of this "stopping" coat in both instances is for the purpose of reducing the absorption by the wood base of any subsequently applied stain.

Appellants urge quite strongly that Lynn does not disclose the use of a stopping coat which would obscure the individual particles comprising the sawdust board because the patentee discloses that his stopping coat is transparent or translucent. However, it is to be noted, as stated above, that Lynn states that the "stopping coat might be colored." While the foregoing statement of the patentee does not absolutely negate transparency or translucency of his particular stopping coat, and assuming that he did not mean to do so, we are of the opinion that it would not involve invention to use an opaque coating rather than a transparent or translucent one in this particular case because at the most this would constitute the use of an obvious expedient to attain the intended result of hiding the base structure.

Claim 35 is dependent on claim 34 and recites that the colored solid material

has a particle size not in excess of .5 microns. We fail to see where this is either critical or inventive. Lynn states in his patent specification that the stopping coat enters the body of the wood. This is exactly what appellants' stopping coat does. We are in full agreement with the examiner that " * * * the optimum size could be determined relative to the desired degree of penetration by routine experimentation by one skilled in the art * * *" and that " * * * in the absence of the degree of porosity of the base, limitation as to particle size is meaningless * * *."

■ Relative to claim 36, appellants admit that an alkyd varnish is not *per se* new, but contend that "novelty resides in the use of the alkyd varnish in combination with the sawdust board in accordance with the process disclosed in claim 34." While, in the light of the references, the use of the alkyd varnish on sawdust board does appear to be *novel*, the law is well-settled that mere novelty is not enough to sustain patentability in the absence of invention. In re Corbett, 142 F.2d 78, 31 C.C.P.A., Patents, 1077; In re Green, 97 F.2d 130, 25 C.C.P.A., Patents, 1143. As we have determined above, it is our opinion that there is no invention present in the process of claim 34. Furthermore, it has neither been pointed out to us nor can we see where there is invention in the use of an alkyd varnish in the process of claim 34 since the alkyd varnish is, in our opinion, equivalent to the varnish used by the prior art. Therefore, the fact that the art does not show an alkyd varnish used with sawdust board is hardly controlling of patentability.

■ It is to be noted at this point, as stated above, that the following statement appears in appellants' application: "For instance, the methods of the present invention may be used to apply a grain to natural wood panels of light color and devoid of any pronounced grain." Thus, insofar as the process of ornamenting the surface is concerned, it appears that appellants, at the time of filing their application, considered sawdust board and natural board to be substantial equivalents. The Lynn patent, as discussed above, discloses a process of ornamenting natural wood which process is substantially the same as appellants' process. It is well settled that where the disclosure of an application gives two materials as equivalents, such disclosure may be sufficient to sustain a rejection of a claim specific to one equivalent where the other appears in the prior art, In re Switzer, 166 F.2d 827, 35 C.C.P.A., Patents, 1013, because the applicants are not in a favorable position to argue that invention lies in the use of the claimed equivalent, In re Lindberg, 194 F.2d 732, 39 C.C.P.A., Patents, 866. This law indicates that the rejection given below should be sustained because the Lynn patent teaches the use of a similar process with one of the equivalents disclosed by appellants.

■ It appears from an affidavit submitted in behalf of appellants and from appellants' brief that a product made in accordance with their disclosure has met with "enthusiastic public acceptance." Evidently this was presented for the purpose of indicating commercial success. However, it is well settled that evidence of commercial success may be controlling only where the issue of patentability is otherwise doubtful. In re Renstrom, 174 F.2d 140, 36 C.C.P.A., Patents, 1020; In re Gillette, 175 F.2d 787, 36 C.C.P.A., Patents, 1172. In the present case we have no doubt that invention is lacking. Therefore, the arguments relative to commercial success are not persuasive toward allowance of the claims.

■ For the foregoing reasons, the decision appealed from relative to claims 34, 35, and 36 is affirmed, and the rejection of claim 37, which does not read on the elected species is also affirmed since it falls with generic claim 34.

Affirmed.

JACKSON, Judge, retired, recalled to participate.

**504**

O'CONNELL, Judge, because of illness, did not participate in the hearing or decision of this case.

WORLEY, Judge, was not present at the argument of this case but, by agreement of counsel at the time of argument, participated in the decision.