### SMYTH MFG. CO. v. SHERIDAN et al.

#### (Circuit Court, S. D. New York.   March 31, 1906.)

**1. PATENTS—INVENTION—BOOK-SEWING MACHINE.**

The Reynolds & Jacobs patent, No. 435,613, for a book-sewing machine, by means of which the signatures are sewn together to form the book by independent lines of stitches located at such points in the back of the book as the requirements of each particular kind of book render necessary, was not anticipated, and discloses patentable invention; the machine being one of great utility and an advance on the prior art by reason of its adaptability to use on different kinds and sizes of books. Also, *held* infringed as to claims 3 and 15.

**2. SAME—INFRINGEMENT.**

Infringement is established, where, comparing the two machines, it appears that the several devices and elements of one perform substantially the same functions as those of the other, in substantially the same way to produce the same result.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 370.]

In Equity.   Suit to restrain alleged infringement of claims 3 and 15 of United States letters patent, No. 435,613, dated September 2, 1890, granted to John R. Reynolds and Arthur I. Jacobs, assignors to the complainant, for book-sewing machine.

Philipp, Sawyer, Rice & Kennedy, for complainant.

Paul Synnestvedt, Emerson R. Newell, and Francis W. H. Clay, for defendants.

RAY, District Judge.   This patent relates to a book-sewing machine by which the separate signatures of which the book is formed are stitched together prior to binding.   In the machine in question each signature is placed astride a swinging sheet holder or bar, the upper edge of which enters the fold of the signature.   The sheet holder is swung forward and down into such a position as will enable the operator to place a signature upon it.   The holder is then swung up, bringing the signature into proper position to be operated upon by the sewing devices.   These sewing devices are arranged in groups, and the instrumentalities of each group co-operate to form a line of stitches.   These lines of stitches are independent of each other. When each group of these sewing devices has formed a stitch in a signature and secured it to the preceding signature, the sewn signature is pushed back and another brought into position.

The sewing is done by a series of semicircular needles, which pass through perforations in the back of the signatures which are made by perforators mounted on the sheet holder bar.   The perforators move in guideways in blocks on the bar, and are lifted and retracted

when necessary for the performance of the work by suitable mechanism. Loopers are carried by a bar and employed to take the loops of thread from the needles. These loopers at each operation cast off the loops previously taken from the needles and take other loops, in a manner unnecessary to describe, but which is well known in the art for making the chain stitch. The shafts of the circular needles are mounted in needle blocks adjustable along a stationary bar, the face of which is provided with a row of concavities engaged by screws. Each needle block is provided with a screw, and each block may thereby be adjusted and held in any desired position. The blocks in which the perforators are guided, as well as the perforators, are adjustable along the sheet holder bar, and may be moved into positions which correspond with the positions given the needles, and the blocks are held in position by screws. The loopers are adjustable on a transverse bar, and the blocks guide not only the perforators, but the curved needles. The blocks guide other needles not used in the formation of the independent line of chain stitches which secure the signatures to each other. These last-mentioned needles are used, when it is desired, to introduce tapes across the backs of the books to give them strength and assist in securing them to the covers. These needles are many times omitted. The thread is supplied by spools. One spool supplies the thread of which the chain stitches are formed, and another spool supplies the thread by which the tapes are secured to the backs of the books. The tapes are supplied from tape reels, and the spools are mounted on a spool holder adjustable transversely of the machine, and this spool holder is provided with a screw or stud, which passes through a slot in a bar upon which the spool holder rests. The spool holder is locked into position by means of a nut. The reels supporting the tapes are mounted on bars in such a manner that they can slide transversely of the machine.

When the position of the sewing devices, which consist of the needles, the perforator guiding blocks, the loopers, and the perforators, is shifted, the thread-supplying devices may also be shifted to correspond therewith. This is true of the tape-supplying devices when used.

As each group of the sewing devices forms an independent line of stitches across the back of the signatures, the books sewn in this manner are very strong, much stronger than when sewn in the ordinary manner. When so sewn, if one line of stitches breaks, the holding of the signatures by the other lines is not disturbed, and the book does not fall to pieces. When signatures are held together by a thread or threads common to all the lines of stitches, the breaking of the thread in one·line will permit one, and perhaps more, of the signatures to fall from the book, and as a result the book will soon come apart. The securing of the signatures by independent lines of stitches is essential to the highest success in the sewing of books by machinery.

I think the evidence in this case shows that the machines made in accordance with the patents of the complainant are a success and have gone into commercial use to quite an extent. I think the evidence

shows that perforators in groups of sewing devices are important and essential to success in the art.

The claims of the patent in suit in issue here read as follows:

"(3) The combination, in a book-sewing machine, of the sheet-holder bar and two or more groups of sewing devices adjustable transversely of the machine, one part of each group of sewing devices being upon the sheet-holder bar and adjustable thereon, and the other portion of the group being above the sheet-holder bar which holds the signature that is being sewed, and also adjustable upon a stationary transverse bar on the machine, substantially as set forth."

"(15) The combination, in a book-sewing machine, of sewing mechanism adjustable transversely of the machine, a spool-holder adjustable transversely of the machine, and a reel-frame and reel for a tape or cord also adjustable transversely of the machine, whereby the instrumentalities for perfecting the book sewing can be thrown in the proper positions in relation to the signatures to be sewed, substantially as set forth."

In the specifications we find the following:

"Machines have heretofore been made for sewing books in which the folded sheet or signature is laid upon an arm or bar and presented to the sewing mechanism; but such sheets vary in size according to the size of the book to be produced, and, in addition to this, different characters of books of the same size require different kinds of sewing, and difficulty has heretofore been experienced in introducing the sewing at the desired point in the back of the book. One of the principal features of the present invention relates to grouping the sewing devices and mounting the same upon adjustable supports, so that they can be placed at any desired point along the back of the signature, and the groups of sewing devices can be associated at any distances apart, so that the sewing may be more or less closely together, according to the character of book that is being sewed, and these sewing devices can be placed at the proper distance from the top and bottom of the signature. In carrying out our invention we group together a semicircular needle and the devices for supporting and moving the same, a loop-tightening mechanism, and presser-plate, which come above the signature and sheet-holding mechanism, and we group together the perforator and the hook-pointed needles that act within the fold of the signature, the perforators forming the holes through which the circular needle passes and the hook-pointed needles drawing down the loops of thread through which the circular needle passes, and these groups of instrumentalities are so supported that they can be moved or adjusted to any desired points, and the one is easily brought into the proper position to the other, and the actuating devices for the respective groups of instrumentalities do not have to be changed. Hence the machine can be adjusted by the party using the same so as to bring the sewing to whatever place or places may be desired upon the folded signature, and we group together the spools and tension devices so that they can be brought into proper position in relation to the groups of sewing devices as required from time to time."

I do not think it important or profitable to discuss further the general working or construction of the device in question, or to insert extracts from the testimony of the expert witnesses.

I think the device or machine of the complainant a great advance over the prior machine of the complainant. I think the device in question was the first to make it possible to sew together on a single machine the signatures of books by independent lines of stitches, and at the same time vary the position of those lines and place them wherever desired, regardless of the size of a particular book. Complainant's expert says:

"By reason of these improvements the patentees have produced a machine which may be practically used to sew books which differ widely as to their sizes and the character of sewing required; a machine, therefore, of great utility, especially in binderies where the work varies greatly in character."

I think this statement correct.

The defendants have a book-sewing machine designed to produce the same results and to produce them in the same way. It has groups of sewing devices which are divided in the same way as the groups in complainant's patent, but the construction thereof is somewhat different. The defendants' machine has a swinging sheet-holder bar, consisting of a pair of plates arranged at an angle to each other, and these plates are carried on arms supported on a rock shift. The operator places the signature on the sheet-holder bar when it is in a certain position, and the bar is then swung up and into the desired position for sewing. When in this position it is operated upon by perforators which act from the inside of the signatures to form apertures through which the needles descend. This is substantially the operation of the patent in suit. These perforators are arranged in pairs, the same as are the perforators of the patent in suit, and are also secured in blocks, which blocks are secured to a transverse bar, which is mounted upon and forms a part of the swinging sheet-holder bar. The needles are arranged in pairs and carried in blocks adjustable by means of screws and a thumb nut along a slot in a stationary transverse bar, which forms a part of the frame of the machine, and this bar is in all substantial respects the same as the bar answering the same purpose of the patent in suit. It has a thread-carrying needle and a hook needle.

In operation, after the perforators have been withdrawn, the needles descend through the perforations in the signature and then a thread carrier, there being a thread carrier for each pair of needles, and these being adjustably mounted on an operating bar carried on the sheet-holder bar, is caused to take a loop from the thread-carrying needle and carry it over to the hook-pointed needle. This is a common way of forming chain stitches with a two needle machine. The needles then retreat, and the hook-pointed needle carries a loop of thread up and through the back of the signature, and each needle as it rises is turned to permit the previous loop to drop or be cast off around the loop which it carries on its hook. When the signature has been thus sewed, it is pushed back by a presser bar, and the sheet-holder bar returns to the feeding position ready for a new signature.

The blocks mentioned which carry the perforators are adjustable along the plate of the sheet-holder bar by means of holes in the plate which are engaged by screws. These holes are in pairs, and there is a pair of screws for each of the blocks carrying the perforators. The thread carriers are adjustably mounted by means of screws on the operating bar.

It is conceded that in the defendants' machine the needles and thread carrier arrangement constitute a more complicated mechanism than the needle and looper of the patent in suit, but they make the same stitch precisely and accomplish the same result.

The complainant also concedes that:

"In the machine of the patent in suit, the curved needle enters one of the perforations made by one of the pair of perforators and passes out of the other perforation, carrying the thread. In the defendants' machine, one needle, to wit, 16, enters the perforations made by one of the perforators, carrying the thread in, and the loop of the thread is transferred to the other needle, 17, which carries it out through the perforation made by the other perforator. Further, each group of sewing devices forms, as is the case with the machine of the patent in suit, a line of stitches across the back of the book, which is independent of the lines of stitches formed by the other groups."

In the defendants' machine the groups of sewing devices are divided in the same way as in the complainant's machine, and a part of each group is mounted on a stationary transverse bar, and the other part is mounted on the swinging sheet-holder bar. It is evident that the purpose of this construction is the same as that of the machine of the patent in suit, viz., to provide for the placing of the independent lines of stitches at any point or points desired in the back of the book. The defendants' machine is also provided with devices for supplying tapes to the backs of the books, and these are made adjustable so as to work in conjunction with the varying positions of the groups of sewing devices. These tapes are supplied by reels adjustable transversely on the bar on which they are mounted. The other is supplied from spools mounted on spool holders which are also adjustable along a slot in a transverse bar, and the spindles are clamped in position by means of nuts.

It seems to me that infringement is made out. The infringement appears more plainly from an examination of the mechanisms in question. It is difficult, if not impossible, to point out here the exact workings of the two machines or the exact construction and the differences. Witnesses have stated that the differences are immaterial so far as the improvements referred to in claim 3 of the patent in suit are concerned. Complainant's expert says:

"The particular combination of elements specified in claim 3 is present in each machine, and in each machine those elements co-operate in substantially the same way to perform the same functions and to produce the same result; that is to say, in each machine the sewing mechanism includes two or more groups of sewing devices, each group being arranged in two parts, one carried by and adjustable along the sheet-holder bar, by which the signatures are successively presented to the sewing mechanism, and the other part of each group is mounted upon and adjustable along a transverse stationary bar of the machine, said adjustable parts of the groups of the sewing devices co-operating to form rows of interlocking stitches by which the signatures are secured together, which rows of stitches may be formed at the desired points along the backs of the signatures."

The complainant's expert also says:

"I find in the defendants' machine, therefore, an element corresponding to each of the elements of the claim, and I find those elements combined and co-operating to perform the same function in substantially the same way as the corresponding elements of the machine forming the subject-matter of the patent in suit."

The defendants' expert contends as to claim 3 that defendants' machine does not infringe, for the reason that the perforators are

not mounted on the sheet-holder bar. I do not think this contention well founded.

I think it well-settled law that infringement is established, when, looking at the two machines and their several devices and elements and at what they do and at the offices and functions performed by each, and the manner in which these offices and functions are performed, we find that the one thing is substantially the same as the other, and that it performs substantially the same function in substantially the same way to obtain the same result. Here the principle and mode of operation of defendants' machine are substantially the same as that of complainant's.

I have carefully examined the patents alleged to show anticipation and have arrived at the conclusion that the patent in suit was not anticipated, and that it discloses patentable novelty or invention in view of the prior art. We have utility and commercial and practical success. I do not think prior use is established. I might spend considerable time and fill considerable space in discussing this question. Prior use must be established beyond reasonable doubt. It is not done here.

I think the book-sewing machine of the patent in suit produces a new and a useful result, and, so far as I am able to determine, it is the first machine by which signatures were secured together so as to form a book by independent lines of stitches located at such points in the backs of the books as the requirements of each particular book demanded or made necessary.

Prima facie the grant of the letters establishes novelty. The burden of proof to show want of patentable invention, in view of the prior art, is on the defendant. Here the defendant has not sustained that burden.

I have carefully examined the question whether or not the patent in suit was inadvertently granted, and am of the opinion decidedly that it was not.

In determining the question of infringement, I have taken fully into consideration the fact that, in construing the claims of the patent in suit, the proceedings in the Patent Office and the prior art must be considered, and that the claims must be limited accordingly.

It follows that the claims of the patent in suit in question here must be held valid and infringed by defendant. There will be a decree accordingly.