**JOHNSON v. HENRICKS et al.**

**No. 188.**

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1944.

Munn, Liddy & Glaccum, and John H. Glaccum, all of New York City, for plaintiff-appellant.

Williams Rich & Morse (Hugh C. Lord, of Erie, Pa. and Giles S. Rich, of New York City, of counsel), for defendants-appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, the owner and patentee of United States patent No. 1,866,771 granted on July 12, 1932, for a wrench, sued the defendants in the District Court for the Southern District of New York for infringement of one claim, the fourth. Validity was the issue contested, the claim having been infringed if valid. The patent was held invalid and the plaintiff has appealed.

The patented wrench is of the type formed by pivoting together two pieces of metal each of which is formed with a jaw at one end and a handle at the other. It is in the general shape of the well-known tool called pliers and has for its claimed novel feature a special configuration of the jaws with handles which do not pass each other when the wrench is in fully closed position. It can be used as a pipe wrench or as a monkey wrench or as pliers and is no doubt a useful tool. As the patentee put it in his specifications, "One of the principal features is the provision of a jaw having a cam-shaped edge, this edge cooperating with the edge of a second jaw so that the wrench will have a tendency to bind more tightly upon the nut or other object which it engages as more pressure is applied to the wrench for rotating the nut. It is not necessary to more firmly grip the two handles of the wrench as greater force is used for moving the nut, as is the case with the usual pliers. The cam edge will automatically cause the handles to tend to swing together as more force is applied in turning the nut."

This tightening of the grip "automatically" by turning pressure applied to a wrench having such a cam-shaped jaw was old and well known. It is so effective that pivoted wrenches making use of the principle need not have any other mechanical means for keeping the jaws firmly pressed upon the

09

object to be turned, once the turning force has been applied. Gunnarson's patent No. 460,230 disclosed that fact as early as 1891, and so did Langstrom even earlier in his patent No. 343,038, where he made use of only a coiled spring to keep the swinging jaw "in a normally-closed adjustment," and depended upon what he called "a curved-face gripping-jaw" to provide the necessary holding force when turning pressure was exerted. In the patent granted to Miller in 1921, No. 1,395,052, a similar single-handed pivoted wrench is shown which in one disclosed form has no teeth but does have one jaw in the shape of a convex cam and the other with edges disposed at an angle to each other in the manner which Johnson called "re-entrantly inclined." In the face of that sort of prior art it would be little beyond the mark to say that the patent in suit discloses nothing but these old pivoted-jaw wrenches with two handles instead of one.

This record, however, shows that the prior art also contains examples of wrenches having this inherent gripping action of the jaws in operation as well as two handles like pliers. One example which relied solely on such gripping jaws without teeth is the German patent granted to Pyat and Burtart in 1904. One of its jaws had edges re-entrantly inclined, i.e., set at an angle, and even at an obtuse angle to which the plaintiff's expert attempted to limit the phrase "re-entrantly inclined" as used in the patent in suit. The other was a smooth convex cam called a swinging "finger." The wrench was so pivoted in the form of tongs that the pressure surface of the swinging finger in lengthwise section was given the evolvent of a circle whose center coincided with that of the pivot bolt. It was, therefore, in the shape and position in the wrench of the convex cam of Johnson and would apply the turning force in the same way. The handles, being pivoted like tongs, would meet and pass, however, instead of stopping short of that as the handles of pliers often do and as Johnson's handles did.

The United States patent No. 591,720 granted to Armstrong is for a multiple-use tool with handles like those of pliers which do not pass each other in any position. It has re-entrantly inclined edges on both jaws. Part of the surface of one jaw is curved so that in operation it obviously acts, at least in the area marked 12, somewhat like a convex cam, though it is plain that most of the turning pressure is applied through the shoulders of notches.

A prior use dating from 1909 of what is called the Crescent Tool Company wrench was conceded by the patentee. This wrench had non-passing handles of the common plier type, the usual pivot in such construction, and one jaw the working edges of which were re-entrantly inclined in a way that certainly forms an obtuse angle between them. The surface of the other jaw was somewhat curved in the form of a convex cam. Whether the curvature was quite enough to exert any gripping force itself during a turning movement of the wrench was disputed, but that question is presently immaterial. One who wanted to secure it would need only to increase the curvature of that jaw, a simple operation which any mechanic skilled in the art could perform in view of the gripping action which it was common knowledge that a cam-shaped jaw would give. The only change would be in the degree of curvature, and it is well settled that such a thing does not rise to the level of invention. Smith v. Nichols, 21 Wall. 112, 22 L.Ed. 566; Tropic-Aire, Inc. v. Cullen-Thompson Motor Co., 10 Cir., 107 F.2d 671, 674; Schreyer v. Chicago Moto-coil Corp., 7 Cir., 118 F.2d 852, 857. To be sure, the somewhat curved jaw on the Crescent wrench also had teeth to amplify whatever cam-supplied gripping ability it may have had, but it is plain that no inventive genius was required simply to forego their assistance by leaving them off whenever a wrench with smooth-faced jaws was preferred as, for instance, Pyat and Burtart did.

With the proof of such prior art as this in the record, the trial judge made no mistake in deciding that no invention was disclosed by Johnson and that the patent was invalid for that reason.

Decree affirmed.