**MYERSON et al. v. DENTISTS' SUPPLY CO. OF NEW YORK.**

**No. 107, Docket 20378.**

**Circuit Court of Appeals, Second Circuit.**

**Feb. 14, 1947.**

Richard F. Walker, of Boston, Mass. (Roberts, Cushman & Grover, of Boston, Mass., and Cooper, Kerr & Dunham and Drury W. Cooper, Jr., all of New York City, on the brief), for plaintiffs-appellants.

John Vaughan Groner, of New York City (Donald W. Robertson, of New York City, on the brief), for defendant-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The complaint in this case alleged infringement by defendant of four patents for artificial teeth issued to the plaintiff Myerson. After trial, but before judgment, plaintiffs withdrew their infringement allegations as to one of the patents. Pursuant to stipulation between the parties the complaint was dismissed with prejudice as to another. There remained in suit two patents, Nos. 2,300,305, issued October 27, 1942, on an application filed September 27, 1941, and subsequently reissued as Reissue No. 22,331, and 2,202,713, issued May 28, 1940, on an application filed December 20, 1937. Not all of the claims under each patent were in issue. All those in issue under both patents Hincks, J., in the District Court held invalid for want of invention, but not for prior use. Those in issue under '305 he held invalid for indefiniteness also. He found that if the claims were instead valid, those under '713 would be infringed by defendant and those under '305 would not be. Writing a painstaking and convincing opinion, Myerson v. Dentists' Supply Co. of New York, D.C.S.D.

N.Y., 66 F.Supp. 31, he ordered the action dismissed. From the dismissal the plaintiffs have appealed.

■ Judge Hincks' opinion contains full and accurate descriptions of the claims under plaintiffs' patents and of the state of the prior art. We shall assume knowledge of those statements in the references we shall make to the contentions of the parties. Plaintiffs' patent '305 is the one covering in substance an artificial tooth, the incisal portions of which are more transparent than those of false teeth previously used. Previous to plaintiffs' patent it was well known to the dental art through the German Vita Publications and other sources that the natural tooth was composed of transparent enamel at its incisal edge. Indeed it had been urged in the Vita Publications that a lifelike appearance in false teeth could be obtained only by imitation of this natural transparency. Porcelain suitable for tooth making which had degrees of transparency or translucency greater and less than those used by plaintiffs' teeth and teeth of the prior art was well known to the dental and the ceramic arts. Transparency and translucency are themselves matters of degree with respect to each other. The prior art also knew, and a model demonstrated at the trial proved, that false teeth having a transparency in the incisal edge sufficient to permit the distinguishing of print through them present an unnatural, ghastly appearance. The plaintiffs' tooth is not such a tooth; it is merely a tooth whose porcelain is to a degree more translucent than others. Such a change in degree may be commercial improvement, but it is not patentable invention. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 568.

■ Plaintiffs' patent '713 is the one involving the simulation of the striation or marking of natural teeth by the insertion in the enamel of the artificial tooth of a triangular insert of material having different optical properties. But this feature was in the public domain after the issuance of the German Rothschild patent No. 540,-317, granted December 3, 1931. The Roth-schild patent disclosed the simulation of natural striation by the insertion in the tooth body of a layer of enamel differing in color from the rest of the enamel in the tooth. To this the plaintiff Myerson added only the adoption of a specific shape of the insert from among the infinite number possible under the Rothschild disclosures. Such a selection of part of an already public disclosure is likewise not patentable invention.

■ While we are thus disposing of the claims on the strictly professional level of prior specific knowledge in the art, we are bound to say that other references might be added, as Judge Hincks did, and that the nature of the claimed inventions is such that at best they could hardly show the "substantial innovation * * * for which society is truly indebted to the efforts of the patentee." Sinclair & Carroll Co. v. Interchemical Corp., supra, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644. Given the form, the structure, and the composition of false teeth, the only matter remaining was a choice of appearance—for the front teeth only—which would most simulate the teeth in the human mouth. Some manufacturers went in the direction of more opaque and colored compositions, while Myerson achieved commercial success by going in the opposite direction. Such commercial success, as he properly says, is "a mere makeweight"; and defendant asserts that a great increase in advertising and the increased demands of lend-lease had their share in the result. Be that as it may, the choice of matching colors was the obvious task of the tooth-artisan. While he worked with fine materials, such a selection seems no more difficult than the careful shadings of degree in many forms of manufacture and industry. But having reached a happy choice, he then is forced to claim an unusual significance to the "transparency" which he has found, while condemning earlier statements in language substantially identical, as an "equivocal transparency," which was his characterization of the Vita disclosures.

We are content, therefore, to accept the findings of lack of invention, as made below. Since this holding as to the claims

in suit of both patents disposes of the appeal, it is not necessary to discuss the other defenses.

Affirmed.