**OXFORD FILING SUPPLY CO., Inc.,**

v.

**The GLOBE–WERNICKE CO.**

United States District Court
S. D. New York.

Feb. 25, 1957.

Darby & Darby, New York City, Louis D. Fletcher, New York City, of counsel, for plaintiff.

Keith, Bolger, Isner & Byrnes, New York City, John W. Melville, Cincinnati, Ohio, Thomas J. Byrne, Jr., New York City, of counsel, for defendant.

HERLANDS, District Judge.

This is an action for patent infringement. Jurisdiction of this court arises under the United States patent laws, 28 U.S.C.A. § 1338.

Plaintiff, who is engaged in the manufacture and sale of office supplies and equipment, charges the defendant, a competitor, with having infringed plaintiff's Patent No. 2,278,403 for a "file support". In addition to denying infringement, the defendant claims that the patent in suit (sometimes referred to in this opinion as the Jonas patent) is an invalid combination patent because it was anticipated and because it lacked invention.

Plaintiff, Oxford Filing Supply Company, Inc., is a corporation of the State of New Jersey, having a regular and established place of business at Clinton Road, Garden City, County of Nassau, State of New York.

The patent in suit is United States Patent No. 2,278,403, issued March 31, 1942, on an application filed January 25, 1941. The patent was issued to Frank D. Jonas, as patentee.

Oxford Filing Supply Company, Inc., is the assignee of the entire right, title and interest in and to the Jonas patent and the invention claimed therein, it being the owner thereof by an assignment dated April 2, 1946. Oxford Filing Supply Company, Inc., has owned the Jonas patent continuously for more than six years preceding July 27, 1955, the date on which the complaint in this action was filed; and it is presently the owner of the Jonas patent.

The Globe-Wernicke Company, the original defendant herein, on August 30, 1955, changed its name to Carthage Corporation. On the same date, a new Ohio corporation was formed, called The Globe-Wernicke Company. Carthage Corporation sold all of its assets to this new company, which undertook the business liability in connection with this litigation.

Plaintiff manufactures hanging files and also manufactures frames on which such files may be suspended.

Plaintiff puts in issue claims 1 to 4, inclusive, of the Jonas patent.

The Jonas patent is concerned with a support in the form of an adjustable framework to be used in filing cabinets or similar receptacles; and it is adapted to be fitted to filing cabinets or drawers of various sizes. It is intended particularly to provide a support for the filing folders of a suspension filing system.

The four claims in issue read as follows (Plaintiff's Exhibit 1, Defendant's Exhibit A, Tab A):

"1. In a suspension file support, a combination comprising a pair of end frames, a pair of continuous longitudinal rails each attached at one end to one of said frames, and means on the other of said frames for engaging said rails at desired points longitudinally thereof for securing them to said other frame whereby the spacing between said end frames may be varied.

"2. In a suspension file support, a combination comprising a pair of end frames, a pair of continuous longitudinal rails each attached at one end to one of said frames, means on the other of said frames for engaging the other ends of said rails at desired points longitudinally thereof for securing them to said other frame whereby the longitudinal distance between said end frames may be varied, and indexing devices attached to said end frames for varying the overall width of the support.

"3. A suspension file support consisting of a pair of open end frames, a pair of continuous longitudinal rails engaging the respective ends of said end frames at the top and means for connecting the rails to said end frames including clamps on one frame for securing it at adjusted positions along said rails, said rails having smooth continuous top edges.

"4. In a suspension file support, the combination comprising a front end frame having a top transverse

bar shaped to form seats at its ends, a rear end frame having a transverse bar, clamps mounted on said last mentioned bar, the end of said bar being formed to cooperate with said clamps to form receiving seats, and a pair of longitudinal rails each mounted at one end in one of the seats of the front end frame and secured thereto, and each adjustably held by the clamps of the rear end frame whereby the spacing between said end frames may be varied."

For a number of years prior to 1941, suspension file supports were commonly made in *fixed* sizes. The *fixed* sized file support could be installed properly only in a filing drawer of correspondingly specific dimensions. Unless such a *fixed* suspension file support properly fit the file drawer into which it was placed, the drawer's maximum storage capacity could not be realized.

However, as will be more particularly pointed out below, there were—prior to the patent in suit—filing devices and attachments covered by other patents in the same general field (such as Barri, French Patent No. 765,510 of March 26, 1934; Sprague, U.S.Patent No. 1,553,565 of September 15, 1925; and Charlton, U.S.Patent No. 1,743,756 of January 14, 1930) that fairly disclosed the subject matter of an *adjustable* file support.

Manufacturers of *fixed* suspension file supports, prior to the patent in suit, could not, as a practical matter, stock or prefabricate *fixed* file supports in large quantities because there was a wide range of sizes of storage spaces (filing drawers) in use (Plaintiff's Exhibit 10). This, of necessity, required that each order for a *fixed* file support had to be accompanied with the accurate dimensions of the storage space in which the *fixed* support was to be used.

Because of this dimensional restriction, each order that required a custom or specialized manufacturing job interposed delays in supplying the ultimate user with the ordered product. This increased the cost to the user and often resulted in rejection because the dimen-

sions submitted were inaccurate. Once made, such *fixed* suspension file supports were incapable of being installed in any file drawer other than the one for which they were made.

Jonas encountered this problem of the *fixed* filing support frame prior to July 25, 1941, the date of the Jonas patent application. As a partner in the Oxford Filing Supply Company he kept records (Exhibit 10) of the dimensional variations encountered in supplying the customers of that company with *fixed* suspension file supports in his effort to determine whether there was sufficient repetitive occurrence of particular storage space dimensions to justify advance manufacture and stocking of *fixed* size frames for those various dimensions. He came to the conclusion that these dimensional variations were so numerous and non-repetitive as to make this commercially unfeasible.

Broadly stated, the mechanical combination disclosed by the patent in suit consists of a pair of end frames, a pair of rails having smooth continuous upper edges, and means for clamping the end frames to the rails at longitudinally spaced points therealong, so as to permit the structure to be installed in a file cabinet of any length within the range of customary lengths of file cabinet drawers. The patentee, Mr. Jonas, and defendant's expert, Mr. Hughes, agree that the foregoing correctly describes the basic structure of the Jonas patent (Trial record, pp. 646–648).

However, the essence of the suspension file support of the Jonas patent was not a new mechanical combination of elements which was non-existent prior to Jonas' patent. The concept and structure of *suspended files* were old. The concept and structure of a *frame to support* suspended files were old. All that Jonas did was to make the supporting frame adjustable.

The Jonas mechanical combination, in a more refined form, includes means generally designated in the Jonas patent as "indexing devices", by means of which the frame can be laterally positioned

within the drawer, that is, centered transversely of its width. This, however, was a conventional and well known device and a common expedient. (See, for example, Matson, United States Patent No. 1,463,710, issued July 31, 1933; Exhibit A, Tab 5, and Exhibit G; Trial record, pp. 512, 529–531.)

Substantially the same combination and structure having substantially the same characteristics, including adjustability and performing the same functions as the patent and structure in suit, are found in three references, namely, Barri, Sprague and Charlton, which are in the same general art or field. Barri, Sprague and Charlton fairly disclosed and anticipated the teachings of the Jonas patent except in two non-critical respects: the three cited patents do not disclose the "indexing devices" of Jonas' claim "2" and they do not disclose a transverse bar to form a receiving seat at the top of the end frames as recited in Jonas' claim "4". (See, for example, Trial record, pp. 707–708.)

United States Patent No. 1,553,565 to Sprague shows a frame structure intended for the same purpose as plaintiff's. The longitudinal rails have telescoping engagement with the end frame members. The fact that adjustability of the structure as to its length was contemplated by Sprague is clearly evident from Sprague's specification, page 2, column 1, lines 26 to 34 inclusive. The Sprague patent was for a filing device which was a suspension filing support whose dimensions were not fixed lengthwise but were fixed laterally. (Exhibit A, Tab 3; Exhibit B. See especially Sprague patent page 1, column 2, line 106 et seq. and page 2, column 1, lines 26–34.) As indicated, the Sprague structure was *adjustable* lengthwise but not laterally. (Trial record, pp. 658, 698.) Sprague faced and solved the same problem in basically the same way that Jonas did. (Trial record, pages 448, 495, 604, 607, 609, 633, 655, 657–658, 660, 692, 698, 709–712, 714–715, 725.) Sprague was cited of record by the Patent Office Examiner but was not applied in any way to the Jonas claims.

On March 26, 1934, French Patent No. 765,510 was issued to Barri for a "device for vertical filing of documents or folders", which was a suspension filing support whose dimensions were not fixed either longitudinally or laterally. (Exhibit A, Tab 1; Exhibit C. See especially Barri patent, as officially translated, page 1, first two paragraphs, page 2, first paragraph, and the first three lines of the second paragraph.) Barri's structure was *adjustable* in both directions. (Trial record, page 658.) Barri faced and solved the same problem in basically the same way that Jonas did. (Trial record, pp. 494, 495, 603, 607–609, 656, 658–660, 692–698, 712–715, 725.) Barri was cited of record by the Patent Office Examiner but was not applied in any way to the Jonas claims.

On January 14, 1930, United States Letters Patent 1,743,756 issued to Charlton for "attachment for filing drawers", which could be converted into a suspension file support whose dimensions were not fixed longitudinally but were fixed laterally. (Exhibit A, Tab 4; Exhibit E. See especially Charlton patent, page 1, column 1, lines 43–51, page 2, column 1, lines 33–35, page 2, column 2, lines 125 et seq. Trial record, pp. 654, 655, 659, 699.) Charlton faced the fundamentally same problem that Jonas did and found basically the same solution in a device which had essentially the same functions and structure as Jonas. (Trial record, pp. 480, 489, 495, 584–586, 588–603, 633, 634, 660, 698–700, 727–736.) Charlton was not cited by the Patent Office Examiner.

With the filing device art in the stage of advanced development described above, it is not surprising that defendant itself had constructed an *adjustable* frame for suspension files in 1940 or 1941. (Trial record, pp. 366–371, 381, 413, 418, 419, 423, 424, 426, 449–451.)

Because (1) plaintiff and its patent counsel attempted to avoid accusations of infringement (Trial record, pp. 371, 404, 406, 407, 409, 410, 414, 415, 417–419,

420, 424, 432, 433); (2) plaintiff was engaged in other projects of greater priority and there was a shortage of materials (Trial record, pp. 372, 393, 394, 398–399, 400, 402, 403, 425); and (3) plaintiff was also engaged in developing a machine for manufacturing suspension files to be used on its filing support (Trial record, pp. 402, 403, 404, 405, 415)—defendant did not commercially produce and market its *adjustable* filing frame (Exhibit 4) until September, 1954 (Trial record, pp. 332, 382, 411, 412). Defendant then went ahead because it had been advised that plaintiff's patent was not valid (Trial record, p. 432).

The Court, however, does not accept the structure made by defendant in 1940 or 1941 as an absolute anticipation of Jonas because (1) the date of defendant's structure is not clear, (2) its structure was characterized as in the "experimental" stage, and (3) it did not produce at the trial one of the experimental models or call as a witness one of the men who worked on its structure.

The plaintiff's (Exhibits 2 and 7) and defendant's (Exh. 4) structures followed the teachings of the prior art in this field. (Trial record, pp. 540, 681–682.)

The Sprague, Barri and Charlton patents were in the same art and field as the patent in suit. We now consider other patents, none of which were cited by the Patent Office Examiner but which are relied upon by defendant as representing analogous art and as demonstrating the lack of novelty of the patent in suit.

The lack of novelty of the patent in suit is indicated by the fact that the structure called for by the Jonas claims is suggested by a number of patents which are not in the specific filing drawer art. Defendant has referred to eight such patents.

The Court has considered each of them in detail. The Court has concluded that they are not in analogous arts or fields. They do not anticipate the patent in suit. Hall Laboratories Incorporated v. Kingon Incorporated, D.C.E.D.Virginia 1956, 146 F.Supp. 801; cf. J. H. Day Co. v. Mountain City Mill Co., 6 Cir., 1920, 264 F. 963, affirming 257 F. 561; 48 C.J., Patents, Section 84, note 43(a); 69 C.J.S., Patents, § 66.

Nevertheless, the problems faced in such patents and the solutions arrived at were closely analogous to the problem faced by Jonas and the solution presented by Jonas. In general terms, it may be stated that in such other patents the patentees faced and solved the problem of adjusting or spacing two frames apart where the frames were connected by one or more longitudinal rails, and that such patents taught the solution to the problem to which Jonas addressed himself. (Trial record, p. 664.)

In specific terms, an analysis of such eight patent shows the following:

1. Strieker Patent No. 1,457,864 issued June 5, 1923 (Exhibit A, Tab 2; Exhibit D) devised a frame for holding a roll of film during development. The structure comprises an end frame integral with a pair of rails and a second end frame adjustable along the longitudinal rails (Trial record, pp. 622–623). The evidence establishes that Strieker worked out a structure to meet a problem similar to that of Jonas' (Trial record, pp. 502–504, 700–701); and that its structure could probably be adapted or modified for use as an adjustable suspension file frame (Trial record, page 625). However, Strieker is in a non-analogous art (Trial record, pp. 623–640).

2. Berren Patent No. 2,256,188 issued September 16, 1941 (Exhibit A, Tab 6; Exhibit F) dealt with a detachable device for airing clothes. The evidence establishes that Berren met and solved a somewhat similar problem in a similar way as did Jonas (Trial record, pp. 508, 572, 577) and that Berren's device could not be adapted for use as a suspension filing frame (Trial record, p. 577). Although not entirely remote (Trial record, p. 639), Berren is in a non-analogous art.

Matson Patent No. 1,463,710 issued July 31, 1923 (Exhibit A, Tab 5; Exhibit G) dealt with a photographic film and plate holder. The evidence shows that it could not be adapted for use as a filing support frame (Trial record, p. 581); and that it lies in a field that would not

naturally come to the mind of a person trying to devise a filing support frame (Trial record, p. 640).

Hildreth Patent No. 1,032,061, issued July 9, 1912 (Exhibit A, Tab 9), dealt with a curtain stretcher. The evidence shows that it is a frame whose dimensions can be adjusted (Trial record, pp. 528, 626); that it does not disclose a pair of end frames or top continuous rails in the sense of the patent in suit (Trial record, p. 627); and that it is in a non-analogous field.

5. Payne Patent No. 977,544, issued December 6, 1910 (Exhibit A, Tab 7), dealt with a glass cutting board and clamp. While it does not have two end frames (Trial record, pp. 550, 578), it is analogous to the patent in suit only in that a comparable problem was solved in a somewhat similar manner (Trial record, pp. 517–518, 548–549, 578–580). However, the Payne device could not be used as a support frame for a suspension filing system (Trial record, p. 580); and it is highly debatable whether its art is analogous to that involved in the case at bar (Trial record, pp. 638–639).

6. Kress Patent No. 770,590, issued September 20, 1904 (Exhibit A, Tab 8), dealt with brackets for the support of curtains, its principal object being to provide an adjustable mounting for the curtain-fixtures. The evidence establishes that it offered a commonplace solution for the problem of connecting a pair of end frames by means of a rail or rails where adjustability is desired (Trial record, pp. 520, 572, 575, 631–633); that it has similarity to the problem and solution of Jonas (Trial record, pp. 519–521); but that it is not a suspension file frame (Trial record, p. 571). It could not be used as a suspension file frame (Trial record, p. 575). It does not suggest a hanging file (Trial record, p. 633); and its art is non-analogous (Trial record, p. 635).

French Patent No. 1,270,401, issued June 25, 1918 (Exhibit 8, Tab 10), dealt with an adjustable scaffold or support for workmen. The evidence establishes that its function and structure illustrate the mechanical principle of a pair of frames connected by a rail or rails where adjustability is desired (Trial record, p. 523); but that the French device does not disclose anything that is analogous to a supporting frame for files (Trial record, p. 629). It is in a non-analogous art (Trial record, pp. 633–637).

8. Hart Patent No. 663,226, issued December 4, 1900 (Exhibit A, Tab 11), dealt with a bicycle stand. This is another case where rods are used to connect two frames and to provide adjustability (Trial record, pp. 524–525, 628). The evidence establishes that Hart does not disclose a pair of parallel rails upon which a suspension filing system might be mounted; that it is remote from the Jonas disclosure (Trial record, p. 629); and that it lies in a non-analogous art (Trial record, p. 635).

It is true that, had Jonas seen these eight patents discussed above, the structural features of their devices might well have suggested the combination covered by the patent in suit to provide a suspension file frame fittable into a wide range of drawer sizes. But since such patents were not in analogous fields, Jonas is not to be charged with knowledge of them.

Jonas admitted that *fixed* frames for supporting hanging files are old. He himself had made such *fixed* frames (such as Exhibit 17) during the period from September, 1939, to December, 1940.

The Barri and Sprague patents are a clear disclosure of such a *fixed* frame, if *arguendo* we should disregard Barri's and Sprague's characteristic of partial adjustability.

Remington-Rand, as early as 1926, had put out its Flexifile (Defendant's Exhibits O, AA; Plaintiff's Exhibit 12; Trial record, pp. 324–326, 365, 383, 428, 441). In 1938, Jonas brought home two or three *fixed* frames, or literature concerning such *fixed* frames, from Europe.

It is interesting to note that the Blodner product (Exhibits N and N–1) was a filing drawer whose top or upper edges

served as suspension rails supporting suspension files. This came out between 1936 and 1939. It is equivalent to a fixed dimension frame. (Trial record, pp. 326, 327, 375, 376–381, 426, 682–689.)

Plaintiff's position is that, prior to Jonas, there were only *rigid fixed* dimension filing frames (Trial record, pp. 650–651); that Barri, Sprague, Field and Charlton illustrate such prior art (Trial record, p. 651), and that the said four patents do not have the element of adjustability (Trial record, p. 654).

The extent of variation in the width of filing cabinet drawers is about two inches; and the range of variation in length is about 15 inches (Trial record, pp. 605–607; Exhibit 10). This is the differential actually involved in the applied concept of adjustability.

The Jonas adjustable frame becomes a fixed frame within the maximum length of the filing cabinet drawer in which it is placed, i. e., the length of the side rails in excess of the length of the filing cabinet drawer is snipped off. Similarly, the Jonas adjustable frame becomes a fixed frame within the maximum width of the frame as extended to the maximum laterally by means of the indexing devices, when the frame is placed in a desk drawer to be used in side-to-side filing. In such a case, the excess length of the side rails must be cut off in order to close the drawer.

However, within the lengths of the side rails remaining after the excess lengths have been cut off in the two situations described, the frame remains adjustable by moving the rear end frame toward the front end frame in order to reduce the amount of rails used for the suspended files. It is the initial and subsequent adjustability of the Jonas frame that is "the heart" of the Jonas patent, according to plaintiff's attorney. (Trial record, pp. 610–615.)

Plaintiff claims that the foregoing elements of adjustability constitute Jonas' teaching and are "a new concept in the form of a new combination" of admittedly old elements performing "a new function." (Trial record, pp. 616–617.)

The mere making of something which is known in the art to be adjustable does not amount to invention.

In Smyth Mfg. Co. v. Sheridan, 2 Cir., 1906, 149 F. 208, at page 211, Judge Lacombe said:

"The specifications, the language of the claims, the concurring testimony of the experts, the laudations of counsel's brief, all unite in showing that the distinguishing feature of the patented machine is its adjustability. * * * Mere adjustability of parts does not constitute invention. [Citing cases.]"

The Smyth case involved a patent for a book-sewing machine. The Circuit Court of Appeals reversed the lower court's decree, 2 Cir., 144 F. 423, which had found the defendants guilty of infringement of two claims of the patent. The machine of the patent was a complicated one, comprising many parts, and exhibiting various combinations. The two claims in issue referred to certain particular combinations, which represented the "distinctive novelty" of the main feature of the patent. At page 210 of 149 F., the Court said:

"From the above excerpt it is manifest that the principal feature, or one of the principal features, is the making of the parts which do the sewing adjustable, so that upon a single machine books of varying lengths may be sewed."

At page 212 of 149 F., the Court said:

"If these two claims are to be given the construction which their phraseology necessarily imports and which complainant contends for, they cannot be held valid in view of the prior art, because their only novel feature is adjustability."

The Circuit Court of Appeals held, 149 F. at page 213, that the patent was "invalid for lack of patentable novelty."

In Kalamazoo Loose Leaf Binder Co. v. Wilson Jones Loose Leaf Co., D.C.S.D. N.Y.1920, 286 F. 715, the Court dealt with a temporary binder or loose sheet holder to hold the loose leaf ledger

sheets while they were being posted. Judge Learned Hand, then a District Judge, held the patent invalid for want of invention.

At page 720, Judge Hand said:

"It is not necessary to consider the metaphysical question whether the two formed a 'combination' or an 'aggregation.' * * * Mere adjustability has often been held not patentable, and will seldom be such [citing cases]. At most this adjustment was a matter of minor convenience, attainable by many mechanical alternatives, none of which presented difficulty, and all of which the claim covered. To succeed, it must depend upon the novelty of the bare idea of moving one or both side members. It was an adaptation which might occur to anyone. I cannot accept it as evidence of invention, * * * *."

In Continental Machines, Inc., v. Grob, 8 Cir., 1943, 137 F.2d 470, Circuit Judge Woodrough dealt with a patent covering improvements in combinations in the back up and guiding elements of a continuous metal filing machine and the means for adjustment of the elements thereof for work of different size or shape, including inside work. The patent was held invalid as not constituting invention over the prior art.

At pages 473–474, the Court said:

" * * * plaintiffs stress the novelty of the feature in combination. In itself it is old art, exactly pictured in early patents pointed out by the court, but the insistence is upon new usefulness in combination. * * * There can be and is no claim of novelty or invention in the general idea of so supporting it, and inasmuch as pieces of work will vary in size and shape, it would seem equally obvious that there should be means to adjust the location of the supports to fit the work. * * * There was no invention in the general idea of providing for vertical adjustment, and 'Mere adjustability has often been held not patentable, and will seldom be such', [citing cases]".

Mere differences in the degree of adjustability between that displayed in the patent in suit and that disclosed by the prior patents in the same field do not rise to the level of invention where all of the patents do substantially the same thing in substantially the same way by substantially the same means. Jonas distinguished over the prior art only in a matter of degree and not in kind. Martin v. Seligman, D.C.S.D.N.Y.1954, 119 F.Supp. 258, 260; Johnson v. Henricks, 2 Cir., 1944, 140 F.2d 108, 109; Myerson v. Dentists Supply Co., D.C., 66 F.Supp. 31, 39, affirmed 2 Cir., 1947, 159 F.2d 681, 682; Helene Curtis Industries v. Sales Affiliates, D.C.S.D.N.Y.1954, 121 F.Supp. 490, 498, affirmed 2 Cir., 1956, 233 F.2d 148, 152, certiorari denied 1956, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80; Wilson Athletic Goods Mfg. Co. v. Kennedy Sporting Goods Mfg. Co., D.C.S.D.N.Y.1955, 133 F.Supp. 469, 471–472, affirmed 2 Cir., 1956, 233 F.2d 280; Georgia-Pacific Plywood Co. v. U. S. Plywood Corporation, D.C.S.D.N.Y.1956, 148 F.Supp. 846.

It is immaterial that Jonas may not have actually known of the prior art, for the law charges him with an acquaintance with all of the earlier developments of the art. Jonas' work was merely the latest refinement of a continuous progress. Foxboro Co. v. Taylor Instruments Co., 2 Cir., 1946, 157 F.2d 226, 233.

The Jonas improvement illustrates a "common expedient known to skilled mechanics," of which the Court may properly take judicial notice. Welsh Manufacturing Company v. Sunware Products Co., 2 Cir., 1956, 236 F.2d 225, 226–227, cited and quoted in Mazzella Blasting Mat Co., Inc. v. Vitiello, D.C.S.D.N.Y.1957, 150 F.Supp. 48.

The combination of the patent in suit does not disclose a patentable invention. Jonas, the patentee, testified (Trial record, p. 215) that "in its physical embodiment" the invention is "the provision of two open end frames, two rails extend-

ing there between, between the tops of the end frames and some means for clamping them to the end frames." Jonas said (Trial record, pp. 217–218) that "the essence of the invention, so far as I am concerned" is "an end frame and two rails and means for clamping them to the two rails." He also said (Trial record, p. 217) that "details of the clamp are unimportant" if such details "conform within relatively broad limits within the requirements of the structure, of the needs of the structure."

So that we have two end frames, two rails and incidental clamping arrangements that constitute the combination. These three elements have been associated together before in some form or other. The combination is an old grouping of old elements. Frames connected by rails for the purpose of supporting hanging files are old. Clamps *per se* are old. Plaintiff frankly admits that the combination consists entirely of old elements (Trial record, pp. 616–617). The Court finds no invention to be present.

If we go further and assume *arguendo* a new element in the combination, we still find that the combination does not disclose or produce new or unusual or surprising or unexpected functions or consequences.

In Great A. P. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, the Supreme Court dealt squarely with the problem of formulating correct criteria of invention appropriate for a combination patent. In the Great A. & P. case, it had been found by the District Court, 78 F. Supp. 388, that each element in the combination device was known to the prior art. The District Court found that the particular conception (a cashier's counter with an extension consisting of a movable frame) was a novel feature and constituted a new and useful combination. In reversing the District Court and the Court of Appeals for the Sixth Circuit, 179 F.2d 636, Mr. Justice Jackson took the position that the mere elongation of a counter, together with the other elements, did not constitute a patentable invention. Mr. Justice Jackson formulated the issue before the Court, 350 U.S. at page 150, 71 S.Ct. at page 129, as follows:

"What indicia of invention should the court seek in a case where nothing tangible is new, and invention, if it exists at all, is only in bringing old elements together?"

Mr. Justice Jackson observed, with specific reference to the combination patent before the court, that it united "old elements with no change in their respective functions"; that the patentee "merely brought together segments of prior art"; and that the mere fact that those elements "produced results more striking, perhaps, than in any previous utilization" did not render the combination patentable. Mr. Justice Jackson warned against using the confusing terms "aggregation" and "combination" as tools of analysis in determining the presence or lack of invention.

Mr. Justice Jackson then said that, in dealing with combination patent claims, the lower courts should "scrutinize" the claims of such patents in the light of the "severe test" of whether "the conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."

In a concurring opinion, Mr. Justice Douglas said:

"It is not enough that an article is new and useful. The Constitution never sanctioned the patenting of gadgets. * * * The Patent Office, like most administrative agencies, has looked with favor on the opportunity which the exercise of discretion affords to expand its own jurisdiction. And so it has placed a host of gadgets under the armour of patents—gadgets that obviously have had no place in the constitutional scheme of advancing scientific knowledge." 340 U.S. at pages 154–155, 156, 71 S.Ct. at pages 131–132.

With immaterial qualifications, the statute, 35 U.S.C.A. § 101, provides that

the inventor of any "new and useful" manufacture or device "may obtain a patent therefor", Section 101, unless the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Section 103.

There has been some difference among the courts with respect to the extent to which the statutory standards for invention codified the common law and with respect to the question whether the underlying legislative intent was to ameliorate the harshness of inventive concept inherent in the authoritative cases of the past two decades. Lyon v. Bausch Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, certiorari denied 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799.

The varying shades of judicial opinion are described in Blish, Mize & Silliman Hardware Co. v. Time Saver Tools, Inc., 10 Cir., 1956, 236 F.2d 913, 914. District Judge Dawson has analyzed the problem in H. W. Gossard Co. v. Neatform Co., D.C.S.D.N.Y.1956, 143 F. Supp. 139, affirmed 2 Cir., 1957, 240 F.2d 948.

Judge Learned Hand pointed out, in the Lyon case, that the term "invention" had become perhaps "the most baffling concept in the whole catalogue of judicial efforts to provide postulates for indefinitely varying occasions." 224 F.2d at page 536.

■ Regardless of the variance in judicial language, the fundamental test still is: if an improvement is to obtain the privileged position of a patent, more ingenuity must be involved than the work of a mechanic skilled in the art. "The principle of the Hotchkiss case [Hotchkiss v. Wood, 1850, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683] applies to the adaptation or combination of old or well known devices for new uses." Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 40, 86 L.Ed. 58. The current validity

of that principle is recognized explicitly by Judge Hand in the Lyon case. See 224 F.2d at page 535.

The language of Chief Judge Clark in Gentzel v. Manning, Maxwell & Moore, 2 Cir., 1956, 230 F.2d 341, 344, is apposite to the patent at bar:

"* * * The somewhat more lenient standard of patentability expressed in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, as required by the recently enacted statute, 35 U.S.C. § 103, will not save this weak patent * * *, since whatever advance plaintiff may have made over the prior art is both obvious and slight."

In other recent cases in this circuit, the Court of Appeals has held patents invalid—notwithstanding the test of 35 U.S.C.A. § 103, as interpreted in the Lyon case—where the improvement was obvious to a person having ordinary skill in the art. Wilson Athletic Goods Mfg. Co., Inc., v. Kennedy Sporting Goods Mfg. Co., 2 Cir., 1956, 233 F.2d 280, 282.

What Circuit Judge Lumbard said in Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 1956, 236 F.2d 225, 227, is especially applicable:

"We think it clear that even under the relaxed standard of invention of Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, there was no invention here. It is not enough to show that the patentee's device was new and useful. It must in addition be an innovation which was not 'obvious * * * to a person having ordinary skill in the art'."

■ In the present case, the Jonas patent falls not because it is simple. See Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1943, 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 434, 31 S.Ct. 444, 55 L.Ed. 527; Baltz v. Botto, D.C.W.D.Tenn.1956, 147 F. Supp. 468. The patent in suit falls be-

cause it was not an innovation which was not "obvious to a person having ordinary skill in the art." The combination in the patent at bar did not result in any unusual or surprising consequences. It united old elements with no change in their respective functions. The patentee merely brought together segments of prior art. The fact that those elements produced results more striking, perhaps, than in any previous utilization does not render the combination patentable. It amounts to a gadget, in the sense in which Mr. Justice Douglas used that term in his concurring opinion in the Great A. & P. case, supra, 340 U.S. at pages 154–155, 156, 71 S.Ct. at pages 131, 132.

Where a combination patent has been upheld as valid, the evidence established that the particular patentee had done more than the skilled mechanic in the art, Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 1939, 106 F.2d 554; or that there was a new relationship of old elements functioning in a new manner to produce a new, different and unobvious result. Baltz v. Botto, supra; Belsinger, Inc., v. American Viscose Corp., D.C.E.D.Pa.1956, 146 F.Supp. 289; Technical Tape Corp. v. Minnesota Min. & Mfg. Co., D.C.S. D.N.Y.1956, 143 F.Supp. 429.

■ The usual presumption of validity that flows from the issuance of the patent has been rebutted by the defendant's clear evidence in this case.

Moreover, the patent and the structure in suit are so simple that the Court is not required to defer to the expertise of the Patent Office Examiner.

Field, Sprague and Barri patents were recited as references by the Patent Office, but there is nothing particularly in the file wrapper (Exhibit BB) to indicate that the Patent Office Examiner made a close study or analysis of all of the relevant prior art.

Defendant does not deny that the plaintiff's structure has been commercially successful. Two and a half million of the plaintiff's frames have been sold from 1940 to the end of 1956. As has often been said, commercial success may tip the scales where the question of validity is in doubt. The Sterling Varnish Company v. Louis Allis Co., D.C.E.D.Wisc.1956, 145 F.Supp. 810, 817. But in the case at bar the question of invalidity is clear.

■ Commercial success is not a substitute for invention. Application of Patton, Cust. & Pat.App.1956, 234 F.2d 499, 503; Wilson Athletic Goods Mfg. Co., Inc., v. Kennedy Sporting Goods Mfg. Co., Inc., 2 Cir., 1956, 233 F.2d 280, 284; Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 1956, 236 F.2d 225, 227–228; Magnus Harmonica Corp. v. Lapin Products Co., Inc., 2 Cir., 1956, 236 F.2d 285, 287.

■ Where the patent in suit is invalid, it is unnecessary to determine the issue of infringement, for such issue is moot. W. E. Plechaty Co. v. Heckett Engineering, Inc., D.C.N.D.Ohio 1956, 145 F.Supp. 805, 810; Bobertz v. General Motors Corp., 6 Cir., 1955, 228 F.2d 94, 101, certiorari denied 1956, 352 U.S. 824, 77 S.Ct. 32, 1 L.Ed.2d 47.

However, in view of the comprehensive testimony and exhibits adduced on the issue of infringement, the Court has considered that issue. If, arguendo, claims 1 to 4 of the patent in suit were deemed valid, the Court would find and conclude that all of said claims were infringed. Plaintiff's and defendant's structures are full equivalents of each other. They function and operate the same way, accomplishing the same result by substantially identical means. (Trial record, pp. 672, 715–716, 725.) Baltz v. Botto, supra.

While the evidence disclosed certain differences in the front and rear end frames between the two products (Trial record, pp. 673–678), these differences are insignificant functionally and structurally.

The Court has made a detailed analysis of each element in each claim of the

patent in suit and has compared each of such elements with the corresponding elements in the defendant's structure. With respect to claim 1 of the patent in suit, the defendant contends that claim 1 was not infringed because the frame structure at the front and rear end frames of defendant's device is identical and not different, that is, the defendant's structure has the same fastenings on the front and rear end frames. According to the defendant, claims 1, 2 and 4 of the Jonas patent call for a different fastening of the rails at one end frame from that at the *other* end frame (Trial record, p. 541); and thus defendant argues that, since the defendant's structure has the same fastening at each end frame, defendant's structure does not infringe claims 1, 2 and 4. The Court disagrees with the defendant's contention in this regard. The variations indicated are insignificant and trivial.

With respect to claim 2 of the Jonas patent, the defendant has advanced two reasons for holding that that claim is not infringed. The first reason advanced is the same argument considered in connection with claim 1. The second reason in regard to the alleged non-infringement of claim 2 is based upon testimony given by defendant's expert (Trial record, pp. 542, 648, 649) and the testimony of Mr. Jonas (Trial record, pp. 207, 209). Claim 2 calls for indexing devices attached to the transverse members. Defendant argues that there are no indexing devices "attached" to its end frames. The defendant's structure has overlapping slots in the end frames to provide for lateral contraction and extension. Therefore, it is argued, defendant's structure does not have indexing devices comparable to the devices of the kind called for by claim 2 of plaintiff's patent. The defendant's argument is rejected because the varia-tion relied on is immaterial and insignificant.

Claim 3, which is the broadest claim of the Jonas patent, would clearly be infringed by the defendant's structure if claim 3 were valid.

Claim 4 is a detailed claim; and the defendant claims that it was not infringed for two reasons; first, for the reason considered in connection with claim 1; and secondly, for the reason that, according to claim 4, the combination includes the following elements: "A front end frame having a top transverse bar shaped to form seats at its ends" and also "clamps mounted on said last mentioned" rear end transverse bar. It is argued that the defendant's structure does not have a top transverse bar shaped to form seats at its ends (Trial record, p. 534) and, also, that in defendant's structure, clamps are not "mounted on" the top rear end transverse bar. (Trial record, pp. 204–206, 542.) The Court considers the variations in detail to be immaterial and insignificant. However, in view of the Court's findings and conclusions that claims 1 to 4 of the Jonas are invalid, there is no finding and conclusion of infringement.

In addition to the conclusions of law indicated in the foregoing decision and opinion, the Court specifically states:

(1) Claims 1, 2, 3 and 4 are invalid;

(2) Defendant is entitled to judgment dismissing the complaint on the merits, with costs.

The Clerk is hereby directed to enter judgment forthwith. Fed.Rules Civ. Proc., Rule 58, 28 U.S.C.A. Matteson v. United States, 2 Cir., 1956, 240 F.2d 517.

Formal judgment and any additional or supplemental findings or conclusions in accordance with this decision may be submitted upon notice, within five days from the date hereof.