**SCHAEFER, INC., Plaintiff,**

v.

**MOHAWK CABINET COMPANY, Inc., Defendant.**

**Civ. A. 6233.**

United States District Court
N. D. New York.

July 28, 1958.

Kernan & Kernan, Utica, N. Y., Merchant & Merchant, Minneapolis, Minn. (Willis D. Morgan, James S. Kernan, Jr.,

Utica, John D. Gould, Ralph F. Merchant, Minneapolis, Minn., of counsel), for plaintiff.

Ferris, Hughes, Dorrance & Groben, Utica, N. Y., Cushman, Darby & Cushman, Washington, D. C. (James Gilroy, Utica, C. Willard Hayes, George T. Mobille, Washington, D. C., of counsel), for defendant.

### BRENNAN, Chief Judge.

Patent validity, patent infringement unfair competition and unjust enrichment are the ultimate issues involved in this litigation.

Jurisdiction is based upon the appropriate provisions of the statute relative to patent law and declaratory relief. That jurisdiction exists in this court to determine the issues involved is not disputed.

The parties involved in this litigation are both manufacturers and distributors of refrigerating appliances. The plaintiff, hereinafter referred to as Schaefer, is a Minnesota Corporation with its principal office at Minneapolis, Minn. It has been engaged in the business above referred to for about thirty years. Defendant, Mohawk Cabinet Company, Inc., hereinafter referred to as Mohawk is a New York corporation with its principal place of business at Chadwicks N. Y. It is a comparatively newcomer in the manufacture of cabinet refrigerators, having been organized in 1951. Its principal business has been the manufacture and sale of low temperature refrigerating cabinets designed for commercial use. Both litigants are direct competitors in the manufacture and sale of ice cream and frozen food cabinets which are generally sold to manufacturers and distributors of the above mentioned products.

The manufactured items involved here may best be described as open top display cabinets with receiving chambers which are entered from the top in which products, requiring refrigeration, such as frozen foods, juices and ice cream, are placed. The products therein may be viewed through the glass front and open top and may be removed from said product chamber through the open top by prospective or actual customers. Detailed description is unnecessary at this point. It is sufficient to say that they are the usual open display refrigerated cabinets which have come into favor in late years for commercial use and are found in many of our stores and shops which offer the products, above mentioned, for sale. Various types of such cabinets are and have been in use for several years.

The cabinets, with which we are immediately concerned, are intended as appropriate receptacles for packaged ice cream. This particular product requires not only low temperature refrigeration but that such temperature remain constant since any interruption of the refrigeration quickly results in melting of the product and a subsequent loss thereof or when refrigeration is restored, the partially melted product has a tendency to crystallize which results in a deteriorated item of salable merchandise. The above condition will arise principally because of an accumulation of frost in the product chamber. This frost results from the condensation of moisture in the product chamber which gathers at the coolest points. Such points were generally located upon the walls or partitions of the product chamber containing or adjacent to the refrigerating means. The refrigerating means thereby become insulated by the frost deposit, become less efficient and same must be defrosted either by exposure to heat or by removing the frost manually from the frosted areas. Either course of action necessarily results in extra service maintenance and damage especially to such a product as ice cream.

The problem outlined above was recognized by the cabinet manufacturers and it is fair to say that efforts were made over a period of years to solve the problem or at least minimize its damaging effects. It may be said generally

that prior to the patent in suit, cabinets were manufactured which embodied the idea of refrigerating units within or attached to the walls of the product chamber and a second refrigerating unit or units located in the upper structure of the cabinet above the top of the open display case which unit was automatically self-defrosting. The upper and lower chambers were so arranged and connected as to cause the warm moist air from the product chamber to travel upwards over and around the upper refrigerating unit. The moisture therein was condensed in the form of frost upon the upper unit and the air thus cooled would flow downward into the product chamber, thus creating a current of warm air moving in an upward direction from the product chamber and a current of cold air moving downward into the product chamber and over or through the products contained therein. It can be readily understood that this method, which appears to be based upon the law of gravity, had a tendency to lessen the moisture content in the product chamber and thereby minimize the amount of condensation therein. It cannot be said that the problem was completely solved.

The patent under attack here represents a further effort to eliminate the effects of moisture. It will be referred to as the Mohawk patent and was the idea and practical application thereof of Mr. Hoye, the president of Mohawk and Mr. Robinson, one of its employees. After the patent was issued, it was assigned to Mohawk who is the present owner thereof. A cabinet, embodying the principles of same, was commercially produced by Mohawk in January 1954. In July of 1954, application for the patent was filed. It was granted June 19, 1956 and bears United States Patent Office Number 2,750,758. On June 25, 1956, defendant, by letter, charged that plaintiff was manufacturing and selling refrigerating cabinets infringing the above named patent. This action, requesting the declaratory relief that the Mohawk patent is invalid, was thereafter commenced on August 20, 1956. We then turn to the patent itself as the first step in the determination of its validity.

The allowed claims of the patent disclose a glass front open top display cabinet, intended for the display of ice cream and similar products. The product chamber has inner walls outside of which and between the inner and outer wall is attached expansion coils which are part of the refrigerating means. Provision is made for an upper chamber, the open bottom of which may be said to empty into the open top of the product chamber. The upper chamber contains an expansion coil connected with the lower expansion coils "the relative cooling capacity of said upper and lower expansion coils being such as to cool the air in the upper chamber to a lower temperature than the temperature of the air in the product receiving chamber so as to establish a circulation of warmed air upward from the product receiving chamber into said upper chamber and cooled air downwardly therefrom into said product receiving chamber". Refrigeration apparatus and means for automatically defrosting the upper coil, including a drip pan, are also provided therein. The claims also provide for heater means carried on the frame adjacent to the open top "for creating a blanket of warm air therein so as to reduce air circulation in and out of said upper top". Concisely, the patent is understood to embody the idea of refrigerating means in the upper chamber and on the outside of the inner walls of the lower chamber. The temperature of the refrigerating element in the upper refrigerating chamber being lower than that in the lower chamber, thereby producing a continuous current of air from the product chamber upward, guided by a baffle to the refrigerating means in the upper chamber where the moisture laden air is cooled and drops downward into the product chamber where it circulates over the product contained therein. The operation, above described, is based upon the principle

that warm air rises while cool air will fall. An additional feature which is claimed to be significant is the alleged creation of a blanket of warm air at the top of the open product receiving chamber which is claimed to be achieved by the application of heater coils around the frame at its open top.

 An appraisal of the Mohawk patent must be made in the light of certain fundamentals. Patentability is a question of fact and reported decisions give us no all-inclusive definition. Novelty, not obvious to a person of ordinary skill engaged in the art, seems to be a statutory requirement. 35 U.S.C.A. § 103. The result must add to the sum of useful knowledge. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162. Whether or not invention exists is then to be determined in the light of the problem to be solved, the skill of the trade, the condition of the prior art, the public knowledge relating thereto and the usefulness of the result attained.

 The fundamental legal guides to be followed in determining the existence of invention are not in dispute. The issuance of a patent creates a presumption of validity. The burden of establishing invalidity rests upon the party asserting it. 35 U.S.C.A. § 282. The burden thus imposed is to present convincing evidence of invalidity before such a finding may be made. Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1 at page 7, 54 S.Ct. 752 at page 754, 78 L.Ed. 1453. Commercial success, utility and imitation may add strength to a prima facie showing of patentability. Schering Corp. v. Gilbert, 2 Cir., 153 F.2d 428, at page 432. Advancement or improvement by those ordinarily skilled in the art does not necessarily constitute an invention. Same is to be expected in the ordinary progress of competitive skills and if obvious, precludes a finding of invention. 35 U.S.C.A. § 103; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, at page 90, 62 S.Ct.

37, at page 40, 86 L.Ed. 58; Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644. The assembly of old elements producing no new or unusual results is likewise lacking in invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra. Whether or not we agree that the standard of invention has been raised in recent years, an advance in efficiency and utility, resulting in a change in some proportion or degree without a new or unusual result, is not recognized as invention. Spring-Air Co. v. Ragains, D.C. 96 F.Supp. 79, at page 82, and cases cited. A detailed discussion of each of the above principles is unnecessary here.

An examination of the prior art readily leads to the conclusion that the Mohawk structures disclosed in the patent and the functioning of the elements in combination were disclosed therein. The Davis Patent No. 2,444,593 is principally relied upon. This patent, which was not directly cited by the Patent Office is its consideration of the Mohawk application, embodies a similar structure and teaches a function of the elements acting in combination in a similar manner as does Mohawk. The Davis Patent discloses upper and lower connecting chambers with refrigerating units located in each. It provides for the circulation of air between the two chambers similar to that disclosed in Mohawk. It does not specifically provide for heater means attached to the frame near the open top. The commercial structure, manufactured under this patent by Hussman, however employs such means and same is disclosed in the Rutishauser Patent No. 2,-479,135. Davis discloses that the refrigerating coils may constitute the partition and/or the main walls of the display cabinet. The Hill Patent No. 2,-207,586 discloses refrigerating means outside the inner wall of the product chamber. Even the baffle, which serves as a guide for the air currents in the Mohawk cabinet is disclosed both in Davis and more particularly in Burtis Patent No. 2,409,413. It is not understood

that Mohawk seriously contests the prior use of the elements referred to in their patent but rather the contention of patentability is based upon the result of the functioning thereof.

It is conceded that all of the individual elements of the Mohawk patent were old in the art prior to the issuance of the patent. The combination must then be scrutinized " * * * with a care proportioned to the difficulty and improbability of finding an invention in an assembly of old elements." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 152, 71 S.Ct. at page 130. The elements acting in combination perform no new function. The result is simply to minimize, the problem sought to be solved —not to completely solve it. The court agrees with Mr. Hoye, one of the inventors, and Mr. Galston, defendant's expert, that the invention claimed in the Mohawk patent consists principally of a combination of old elements in which the refrigerating capacity of the upper refrigerating means is increased, thereby attracting more moisture laden air from the product chamber and decreasing the tendency of frost to form therein. That a mechanism capable of improved performance resulted need not be argued. Such advancement in industrial arts is an everyday occurrence. Mere change in size, form or degree does not amount to invention. "Such a change in degree may be commercial improvement, but it is not patentable invention. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644." Myerson v. Dentists' Supply Co. of New York, 2 Cir., 159 F.2d 681, at page 682.

A word should be said concerning the element of heater means or wires carried by the frame adjacent to the open top, the announced purpose of which is to create a blanket of warm air so as to reduce air circulation in and out of said top. This is the only new function claimed to be performed by any element of the Mohawk combination. Heater means adjacent to the top are old in the art. They have been in use by Schaefer in its cabinets since 1950. The primary purpose of same was to prevent condensation in the adjacent area and to make the area more comfortable to the touch of prospective customers. The evidence offered does not convince the court that such heater means creates a blanket of warm air and reduces air circulation as claimed in the Mohawk patent. It is true that warm air, which has a tendency to rise, will also tend to retard the rise of cold air beneath it. Warm air however is not stagnant and will rise if the air above it is cooler. The evidence offered leads the court to the conclusion that the heater means referred to in the Mohawk patent prevents condensation and adds to customer appeal but otherwise it is a detriment rather than a help in the refrigerating process. It would seem logical that when more heat is inserted within the cabinet, more refrigeration is required.

The fact that the cabinet, embodying the Mohawk patent, has met with unusual commercial success has not been overlooked. Commercial success however does not in itself establish invention. This factor is variously applied in many reported cases. It has no weight unless invention is found. It therefore is not a determinative factor here in the light of the rule expressed in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, applying to combination patents. Commercial success is not to be used " * * * first, to create a doubt, and second, to resolve it." Bishop & Babcock Mfg. Co. v. Fedders-Quigan Corp., D.C., 159 F.Supp. 815, at page 826. Ice cream cabinets are specialized items of merchandise. They are sold through the efforts of salesmen and to a limited class of purchasers. Sales efficiency, price, service and improved performance may well be powerful factors in the matter of commercial success.

Mohawk claims that the result attained is indicative of invention. Such an argument is not appealing. The collection of frost in the product chamber of this

particular type of display cabinet may be the result of many intangibles. The location of the cabinet in respect to its exposure to draft or air currents, humidity of the surrounding atmosphere and the size of the open top all directly affect the result to be expected or attained.

■ The conclusion is reached that the patent in suit, referred to as Mohawk Patent No. 2,750,758, is invalid for want of invention and because anticipated by the prior art. The plaintiff is entitled to judgment accordingly.

### Patent Infringement

■ The cause of action alleged in defendant's counter-claim requires little comment. In the first place, an invalid patent may not be infringed. Secondly, it is doubtful that the Schaefer structure uses the elements which appear to be essential in the Mohawk Patent.

Schaefer does not use the heater means or wires carried on the frame adjacent to the open top for the purpose of creating a blanket of warm air which is one of the essential elements in the Mohawk combination. Heater wires are attached to the Schaefer cabinet for the purpose of preventing condensation and supplying a warm surface for customer touch. There is no claim that such heater means accomplishes a blanket of air in the Schaefer cabinet such as is referred to in the Mohawk patent. In fact, the evidence is to the effect it does not operate in any manner so as to come within the claim of Mohawk.

### Unfair Competition and Unjust Enrichment

■ Defendant has alleged in one cause of action a counter-claim for unfair competition and unjust enrichment.

Unfair competition is closely akin to patent infringement. The claim seems to be based upon the evidence that prior to the manufacture of the Schaefer cabinet, the company purchased a Mohawk cabinet, dismantled same and made an examination of the structure and parts thereof in order to construct a similar cabinet. The record is not clear as to actual use by Schaefer of the knowledge thus acquired. The practice of the examination of competitor's merchandise seems to be recognized as within the purview of legitimate business competition. The essential evidence to establish a "palming off" of Schaefer's product as the product of Mohawk is entirely lacking in the evidence. Both cabinets are plainly marked so as to disclose their source and it is sufficient to say that the evidence is entirely lacking to sustain the defendant's counter-claim based thereon.

■ The claim against Schaefer, based upon the theory of unjust enrichment, is insufficient in its allegations and unsupported by proof. A confidential disclosure to Schaefer or a confidential relationship between Mohawk and Schaefer is in no way alleged. Mohawk's theory of recovery upon this counter-claim seems to be based upon a property right which was in some way misappropriated by Schaefer in the matter of their examination or imitation of the Mohawk cabinet. The evidence is insufficient to support the claim and same will be dismissed.

No attorneys' fees will be allowed.

Findings and judgment will be prepared by counsel in accordance with the views expressed in this opinion. If same are not agreed upon, they can be settled on ten days notice.